### Holbrook and Fessenden vs. Russel Hyde.

That neither party has a right to claim of the court instructions to the Jury upon
a point not material to the issue, unless it be to place it out of the cause.

Neither can they claim instructions in any precise form, if the instructions prop-
er in the case are fully given in any form.]

That property, readily distinguished as cattle are, is not lost, nor the right of re-
covery embarrassed, by commixture.

In this action the plaintiffs obtained a verdict in the County
Court, and the exceptions taken by the defendant and allowed by
the judges who tried the cause, present the questions raised before
the Supreme Court.    Those exceptions are as follow : "*Holbrook
and Fessenden* vs. *Russel Hyde,* tried at *Windham County Court,*
September Term, 1827.    There was no dispute but that the
defendant took the property as charged in the declaration of the
plaintiffs.    But he justified the taking by virtue of sundry writs and
executions, to him directed, in favor of sundry creditors of *Ira
Wetherhead,* and against said *Wetherhead,* and that it was taken
as his property—so that the real dispute was, whether the prop-
erty in question belonged to the plaintiffs exclusively, or so be-
longed to said *Wetherhead,* as to be liable to attachments and
levies for his debts.    The plaintiffs introduced evidence tending

to show—That in March, or A- $\Big\{$     Windham Feb. 1828.

pril, 1822, they owned two $\Big\{$    *Holbrook & Fessenden* vs. *Hyde.*

farms in *Halifax*, about 12 miles from their own residence,—one called the *Weeks farm*, and the other called the *York farm*—that they let said farms with fifteen or sixteen cows, and a waggon, to said *Ira* for one year, on terms of dividing the produce; and said *Ira* to have one half—That said *Ira* had lived at *Guilford*, and had been reputed to be worth about *one thousand dollars*, in a small farm and other property, but had failed—but settled his affairs without suits—That he was reputed to be poor and embarrassed in his circumstances when he left *Guilford* and took said farms—That said *Ira* occupied said farms, said year, his family living on the *Weeks farm*—That in the spring of the year 1823, the plaintiffs leased said two farms to said *Ira* for a year, he to give for the use one thousand pounds of pork, one thousand pounds of cheese, and one hundred pounds of butter—as by a writen lease, marked A. and made a part of this case, will appear— That the said *Ira* in the said spring of 1823, was reputed to be worth from one to two hundred dollars—That said *Ira* occupied said two farms said year under said lease—also that he continued to occupy the same the year following, but it does not appear, on what terms, only the plaintiffs' counsel stated, that a sum of money was substituted for the pork, cheese, and butter; and this not denied by the defendant—That in the spring of 1823, the plaintiffs and said *Ira* agreed upon men to appraise the stock on the farms, at the beginning and end of the year, to ascertain whether said *Ira* kept the same good as he was to do—That accordingly said appraisers appraised fifteen cows and a yoke of oxen— that they found them as good in the spring of 1824; the oxen were not the same, nor were all the cows the same. The plaintiffs. were not present at either of the said appraisals; that in the spring of 1825, a new contract was made, by which the said *Ira* was to carry on the farms for the sum of one hundred and fifty dollars for a year, and the plaintiffs have all the proceeds except what was necessary for the support of said *Ira* and his family, according to the stipulation of their written agreement, marked B, and made a part of this case—That said *Ira* and family continued to take the care of the farms and dairy, under this contract, to the end of the

*Windham*, Feb. 1828.

*Holbrook & Fessenden* vs. *Hyde.*

year, and still continued until the 17th day of August, 1826, when they submitted to a neighbor of said *Ira*, to decide whether the price ought to be the same this year, considering the season, as was given in the year 1825, who awarded that the sum to be given the said *Ira* should be one hundred and sixty dollars ; accordingly they agreed as in and by their written contract of that date, marked 'C, and made a part of this case. There was also testimony concerning the value of the property taken by the defendant. There was no testimony on either side tending to show that the several charges in the terms of said *Ira's* carrying on said farm, were publicly known, nor that any enquiry was made of the plaintiffs concerning the same, nor that there was any attempt or wish to keep the same a secret.

The defendant introduced testimony tending to prove, that said *Ira*, in the year 1825, let the house and garden on the *York-farm* to one *Simeon Leonard*, for a year, for twelve dollars ; that his cow was kept there winter and summer, and that said *Leonard* paid for all this in foddering cattle on said farm in winter, in labor on said farm, and some in shoe-making ; that said *Ira* took to pasture, on said *York-farm*, 20 or 30 sheep for his brother, a few weeks in 1825 ; that said *Ira* purchased goods for his family, and articles to use on said farms, as mentioned in the deposition of *George Tracy*, made a part of this case. Some other similar purchases were made, but their dates did not appear. The defendant, in his defence, produced regular precepts, shewing his right to take the property in question, if it were the property of said *Ira* ; and attempted to shew that it was the property of said *Ira* —and that if any of it belonged to the plaintiffs, at any time, they had suffered said *Ira* so to use it, and so trade upon it, and so mix it with his own, that his creditors had a right to take, it for his debts. And the defendant introduced testimony tending to show the following facts, to wit, That said *Ira*, during all the time he so occupied and took care of said farms of the plaintiffs, hired of one *Wilcox* about thirty acres of land adjoining said *Weeks farm*, at a rent of about eighteen or twenty dollars a year, and cut thereon about ten tons of hay, yearly, and in said year 1826, cut about ten tons of hay thereon—that all this hay was put into the same

barn with the hay cut on the plaintiffs'    Windham, Feb. 1828.

arms, in possession of said *Ira*, and no ac-   *Holbrook et al. vs. Hyde.*

count kept of the same—That the same was foddered out to, and the 30-acre-piece fed by, the stock of plaintiffs, and that purchased by said *Ira*, promiscuously—That said *Ira*, after the contract about the occupancy of the farms, made in the spring of 1825, and before the taking by the defendant now complained of, made the following trades:—That in the fall of 1825, he sold to *Esq. Goodhue* of *Brattleborough* eight swine from said farm ; to which sale said *Fessenden* had before expressed his consent to said *Goodhue*—That said *Ira*, in the spring of 1826, exchanged a pair of oxen, that were on the farm, with *Nathan Marsh*, for a pair of steers, and received thirty five dollars in cash as boot, and sold said steers to one *Crosier*, for fifteen dollars cash and *Crosier's* note for fifteen dollars, which note he transfered to *Mr. Houghton*, in part payment of said *Ira's* debt to said *Houghton*—That these oxen, exchanged with said *Marsh*, were called the *Houghton* oxen—That said *Ira*, in April, 1825, bought of *Mr. Niles* the oxen called the *Niles* oxen, and gave his note for fifty seven dollars, which is not yet paid—That he asked said *Fessenden* to pay said note, and he answered that he would pay it if he was obliged to pay it—That since this suit was brought, said *Holbrook* told him he should have his pay—That in May, 1826, *Benjamin Green* sold said *Ira* two cows for thirty six dollars, and took his note, six dollars only of which have been paid—That said *Ira*, about the same time, bought a two-year-old bull, but how, or whether paid for, was not named by the witness—That said *Ira* bought a cow of *Mrs. York*, and paid in ready cash at the appraisal of *Col. Farnham* : this the witness thinks was in the fall of 1825, but of this he is not certain—That in May, 1826, said *Ira* exchanged a pair of two-year-old steers with *Charles Dennison*, for a pair of four-year-old cattle, and gave his note $24,50, to boot—which note is not yet paid. A bill of sale, dated March 8, 1825, from said *Ira* to the plaintiffs, was produced by plaintiffs, on notice from defendant, and read by defendant, and refered to as a part of this case ; and there was no evidence of any consideration paid by plaintiffs for the same, otherwise than appears on said bill of sale. Further evidence, adduced by the defendant, tended to

NN

show—That in the spring of 1825, said *Ira,* gave in the list of all the stock on said farms, and the list of the same was made up against him, as was also the said *Wilcox-farm*—And the said farms of the plaintiffs were set in the list against the plaintiffs—and in 1826, said *Ira* gave in the personal property on both said farms in his own name to the listers, and the list of both said farms and property for that year, was made up against said *Ira* and the plaintiffs jointly, and that the plaintiffs, promptly paid all the taxes assessed against them on said list, but refused to pay the taxes assessed against said *Ira* on said list of 1825, saying they did not know upon what it was made up ; and there was no testimony shewing that they did know upon what it was made up—That on the morning of August 18, 1826, the plaintiffs procured a pair of four-year-old cattle, a pair of three-year-old steers, and four or five yearlings, to be driven to them at *Brattleborough.* The witness testified that starting before day was his own notion entirely. That in said August, 1826, and a few days before said August 17th, the sheriff had an execution against said *Ira* for about $40,00, and spoke to said *Ira* about his paying the same when he was at *Brattleborough,* near the dwelling of the plaintiffs—That in August or Sept. 1826, *Martin,* one of the attaching creditors, in presence of the defendant, told *Fessenden* they had attached the property on the farms, as said *Ira's,* and wished him to designate which was his, and which said *Ira's* : *Fessenden* said it was all his ; said *Ira* had none there, except the waggon and harness, which he believed was *Ira's*— That after this, the defendant returned ten of the cows to the plaintiffs, and sold the rest at auction—That said defendant and the creditors applied to said *Ira,* before said attachment, to designate what property was his, and he declined. The said oxen bought of said *Niles,* and some other of said creatures bought by said *Ira,* were among the cattle attached by the defendant. The plaintiffs produced testimony tending to shew that the plaintiffs on said August 17th, purchased of said *Ira* the three-year-old steers and young cattle, thus driven to *Brattleborough*—That the appraisers went and saw said four-year-old cattle—but one of said appraisers said he did not remember that the said four-year-olds were appraised—Also further testimony tending to show that the amount

of the creatures appraised was to be en- ⎰
dorsed on one of three notes the plaintiffs ⎱
then held against the said *Ira*—That said notes were then seen, and said *Ira* said it made no difference on which note the endorsement was made—That these notes had been in the files of the plaintiffs' notes a year or two, or two or three years. The plaintiffs produced the three notes, on one of which was endorsed the said creatures so driven to *Brattleborough*—stating their separate prices, and amounting to seventy-six dollars. None of these cattle, so driven to *Brattleborough*, were attached by the defendant. There was also evidence tending to shew a full consideration for said note on which said cattle were endorsed, by plaintiffs paying one *Hart* a note for a like sum against said *Wetherhead.*

The defendant requested the court to charge the jury, That the plaintiffs had not shewn any valid consideration for the property— Also, that the aforesaid acts and doings of the plaintiff and said *Ira*, were evidence of fraud against the creditors of said *Ira*—Also, that if the jury should find some of said property, in possession of said *Ira*, to be his property, but so mixed with the property of the plaintiffs, that the officer on due inquiry could not distinguish them, the plaintiffs could maintain no action against the officer for taking their property, until notice and demand of their property. The court did not charge as requested by the defendant; but did then and there instruct the jury—"That if they believed the con-
" tract about said *Ira's* taking and occupying said farms of the
" plaintiff's from year to year, to be as the plaintiffs contended for;
" the said *Ira* would have the control of one half the produce of
" said farms, for the year 1822, or his first year, and would have
" the entire disposal of the produce, during his second and third
" years, or 1823 and 1824, and be liable to fulfil his contract to
" pay the rent, that is 1000 lbs. of pork, 1000 lbs. of cheese, and
" 100 lbs. of butter, for 1823, and the same, or money in stead
" thereof, for 1824—that in 1825 and 1826, the said *Ira* would be
" the mere hired man of the plaintiffs, and the whole produce
" would be theirs. If he traded upon their property in a way
" sanctioned by them, and acted in their name, and as their agent,
" the property by him thus purchased would belong to them, and
" his possession on said farms, would be their possession: But

Windham, Feb. 1828.

*Holbrook et al.* vs. *Hyde.*

"that if he purchased property upon "his own account, while he thus acted "as a hired man of the plaintiffs, and gave his own private "notes, and not notes of the plaintiffs, signed by him as their "agent, and the creatures thus purchased were put upon said "farms under the care of said *Ira,* they must be considered "as in the possesion of said *Ira,* and any sale of the same from "him to the plaintiffs would be incomplete, as against the credit- "ors of said *Ira,* until a visible change of the possession from "said *Ira* to the plaintiffs; that this was the fraud in law of which "mention was made by counsel, and the attaching creditors "could hold the property. The *Niles*-oxen, and some cows "were in this situation, if the testimony on the subject should gain "credit with the jury—that so much of the property as they should "find the defendant had attached, which had been thus purchased "by the said *Ira,* and yet remained under his care upon said "farms, they would leave in the hands of the defendant, for the "benefit of the attaching creditors—Further, that the doctrine of "*commixture* contended for by the defendant, and which is law, "as relates to such property as grain, and goods in a store, is not "applicable to cattle, like those attached: they may be distin- "guished on reasonable inquiry—That with regard to the hay cut "in 1826, upon the *Wilcox*-farm, there was no testimony tend- "ing to show that the plaintiffs knew of its being put in the barn "with that cut upon the plaintiffs' farms, and if there was any loss "by *commixture,* it must fall upon him who occasioned it, which, "in this case, it seems, would be the said *Ira,* under whom the "defendant claims—That the jury might let the defendant retain "so much of the hay as was cut upon the *Wilcox*-land, which is "as much as he can fairly claim as the result of what grew there. "That with regard to the fraud in fact contended for, the court "did not recollect sufficient evidence of such fraud to require "any remarks from the court—yet if the jury recollected such "evidence, they must give it its full weight—that fraud in fact "consisted, in this case, in the plaintiffs getting into their custody, "and claiming to own, the property which really belonged to said "*Ira,* with intent to keep it from his creditors—That if the plain- "tiffs had demands against said *Ira* which were honestly due as

" might seem by the notes produced, they } Windham. Feb. 1828.
" had a right to their pay like other credit- } *Holbrook et al vs. Hyde.*
" ors—That if they found no fraud in fact, they would find for the
" plaintiffs to recover the value of such property attached by the
" defendant, as they should find belonged to the plaintiffs, and had
" never been purchased nor owned by said *Ira*." To which decisions the defendant excepted; and said exceptions were allowed.

The papers referred to in the said case, are there sufficiently described to show the bearing of the points of law, without making the case longer by their insertion at length.

*The counsel for the defendant argued in support of their exceptions.* The errors apparent upon this record, are 1. The plaintiffs showed no valid title to, or consideration paid for, the property in question. The property being merely in possession of *Wetherhead* on their farm is as consistent with the fact of its being owned by him, as them: and, indeed, more so, under the tenancy of the first, second, and third years, being upon shares or a rent certain. The appraisal of the stock in 1823 and 24 between plaintiffs and *Wetherhead*, shewed nothing. For such testimony can always be prepared by the party; and the defendant can never rebut it. Besides, *Wetherhead*, from the first, bought, sold, and exchanged this stock at pleasure with the privity of the plaintiffs. This gave him credit as for the real owner; and the plaintiffs now shall not be permitted to controvert it.—1 *Aik. R.* 370, *Trask vs. Donoghue.—Viner's Ab.* 89.—*Paley's Agency,* 78, *note.*—7 *T. R.* 360–1.—The bill of sale was clearly fraudulent, delivery and possession not following it.—*Twine's case.*—1 *Aik. R.* 116, *Durkee vs. Mahony.*

2. The jury having found a part of the property in question to have clearly belonged to said *Wetherhead*, or at least, under the charge of the court, they might have so found it, but so mixed with the plaintiffs' property of a like kind, that the officer could not distinguish it, upon due and reasonable inquiry, the plaintiffs can sustain no action against the officer, until they point out to him their property and demand it.—7 *Mass. R.* 123.—This appears not to have been done; and the court charged that it was not necessary, " because the officer on reasonable inquiry might distin-

Windham, Feb. 1828. } guish." But the officer did make rea-
Holbrook et al. vs. Hyde. } sonable inquiry and could not distinguish. The rule is not confined exclusively to such articles as " grain and goods in a store." The court here, either made a distinction without a difference ; or a distinction that does not apply to the case.

3. The plaintiffs and *Wetherhead* were at best but tenants in common of the hay, and the jury had no power to sever. It was idle to tell the jury on whom the " loss by *commixture* should fall." There could be no loss. And the jury should have been instruct- ed that the plaintiffs by means of their farms, cannot be permit- ted to furnish for this insolvent debtor, a convenient deposit into which he may throw his property, and earnings, and thus mix and cover it from his creditors.

4. The court misdirected and misled the jury, by instructing them, " That the court does not recollect any sufficient evidence of fraud in fact, to require any remarks from the court." It is the duty of the court, not only to instruct the jury in the law, and also the facts they are to find ; but particularly to point out what testimony will constitute the proper evidence of such facts. 1 *Aik.* 116, *Durkee* vs. *Mahony.*—*id.* 369, *Mason* vs. *Silver.*— If a factor, *cestui que trust*, or agent, continue a long possession, by which the goods are taken to be his own, and credit given to him on that account, such goods may be taken in execution a- gainst such agent ; and may be holden by the assignee under a commission of bankruptcy.—*Viner's Ab.* 89.—1 *Aik.* 370, *Trask* vs. *Donoghue.*—*Pal. Agency.* 78.—7 *T. R.* 36.

*Counsel for the plaintiffs, contra.* This was an action of tres- pass, for taking stock, hay, farming-tools, &c. The defendant justified under process against *Ira Wetherhead;* and the only question was, whether the property belonged to plaintiffs or *Weth- erhead,* and the questions now arise on exceptions taken to the charge of the court. The court charged the jury that as to all the property which was purchased by *Wetherhead,* and remained in his care, the plaintiffs' title was fraudulent in law ; so the case to which the exceptions apply, relates only to the plaintiffs' title to the rest of the property ; whether it was fraudulent in fact.

The defendant requested the court to charge 1. " That the

plaintiffs had not shewn any valid consid-
eration for the property." It is not per-
ceived that any argument can be raised on a refusal so to charge.
The farms belonged to the plaintiffs and were in their possession,
*Wetherhead* being their hired man. They had put on the stock
and tools. The hay, recovered for, grew on the land. De-
fendant produced a bill of sale acknowledging a consideration
for a part. The defendant was bound to shew property in
*Wetherhead.*

2. " That said acts and doings of the plaintiffs and *Wether-
head*, were evidence of the fraud against the creditors of *Wether-
head.*"

*As to those of Wetherhead*, it is insisted they were not evi-
dence, unless done by the knowledge and assent of plaintiffs; that
the acts themselves, did not tend to show a want of property in
plaintiffs, or a use made of it tending to defraud creditors. The
first answer is deemed sufficient; yet each act complained of will
be examined. These acts, are to be taken in connection with the
relation of the parties, and that relation is presumed to be known
to the creditors, as it might have been known by inquiry of plain-
tiffs.

1. The letting of the *York-house*, keeping *Leonard's* cow,
pasturing his brother's sheep. It is to be presumed this was to
be accounted for by *Wetherhead*, if done with the knowledge of
plaintiffs; if not, it was in fraud of the plaintiffs, not of *Wether-
head's* creditors, but in favor of them. If it tended to prove fraud
it would be that the farm was his.

2. That he purchased goods for his family, (and why not?) and
articles to be used on his farm. An authority to do this, resulted
from the relation of the parties; and if paid for, or furnished by
*Wetherhead*, were matters in account between the parties.

3. That he hired 30 acres of *Wilcox*, from 1822 to 26, and
that the produce was promiscuously fed out to *Wetherhead's* and
plaintiffs' cattle, &c. This would also be matter of account and
the keeping of *Wetherhead's* cattle offset against the profits of this
land : but could have no tendency to affect plaintiffs' title to his
property, real or personal. The part of the hay cut on this piece
in 1826, was exclusive of the charge.

4. That in 1825 he sold to *Goodhue* eight swine off of said

Windham, Feb. 1828.

Holbrook et al. vs. Hyde.

farm, by the consent of *Fessenden*. This tends to prove property in plaintiffs.

5. That in 1826, *Wetherhead* exchanged a pair of oxen for a pair of steers and $35; sold the steers to *Crosier* for cash $15, and his note for $15, which note he sold to *Houghton* in payment of *Wetherhead's* debt, and that said oxen were called the *Houghton* oxen. If these trades were made with the plaintiffs' assent, that they were the authorized acts of the agent, and what was received, so far as went to *Wetherhead's* benefit, was matter in account. If not with plaintiffs' assent, they were unauthorized, and not a fraud on *Wetherhead's* creditors, but on the plaintiffs. It is not perceived that any inference can be drawn from the name of the oxen.

6. That in April, 1825, *Wetherhead* bought of *Niles* the *Niles'* oxen for his note of $57, which *Fessenden* said he would pay, if obliged to; and *Holbrook*, since the action, said he would pay. What become of these oxen does not appear, only by the charge. But if plaintiffs were bound to pay for the oxen, unless included in bill of sale, 1826, it would seem that the oxen would be theirs by *Wetherhead's* purchase. These were excluded by the charge.

7. That in May, 1826, *Green* sold two cows to *Wetherhead*, for his note of $36,00, and six dollars only has been paid. What became of these does not appear, unless contained in the bill of sale of 1826; if so, were excluded by the charge.

8. That about the same time *Wetherhead* bought a two-year-old bull—but it did not appear how he paid for it. The same remarks may be made here as in the last point.

9. That at the same time *Wetherhead* bought a cow of *York*, for cash $10,00—in 1826, exchanged a pair of two-year-old steers with *Dennison*, for a pair of four-old-olds, and gave his note for $24,50, boot.

10. All these purchases only prove that *Wetherhead* some times purchased on his own account : and this is also proved by plaintiffs purchasing of him ; but has no tendency to affect plaintiffs' title.

11. The bill of sale of 18th March, 1825, expressing a consideration. This was produced by defendant, and is evidence of what it purports. It was not necessary for plaintiffs to support it by proof of consideration ; but for defendant to impeach it.

12. That in 1825, *Wetherhead* gave in all the stock and the

the *Wilcox* farm in his own name, and the ⎧ Windham, Feb. 1828.
two farms in plaintiffs' name; and they ⎨ *Holbrook et al.* vs. *Hyde.*
were so set in the list. This did not appear to have been done
with the knowledge or assent of plaintiffs, and could not be con-
sidered as any evidence of property.

13. That in 1826, *Wetherhead* gave in all the property on both
farms in his own name; but the lists were made of the whole
property, real and personal, to *Wetherhead* and plaintiffs jointly.—
It seems the listers did not consider *Wetherhead's* list as evidence
of his property. And if the list of 1825 was evidence, that of
1826 was also, and did away that of 1825.

*As to the acts of the plaintiffs.* 1. That plaintiffs paid the tax
on *Wetherhead's* list of 1825—saying they did not know upon
what it was made. This proves they had no idea it was made
on his property.

2. On the morning, plaintiffs procured a pair of four-year-old
cattle, a pair of three-year-old steers, and four or five yearlings
to be driven to *Brattleborough.* These were shown to have been
purchased by the bill of sale of 17th August, 1826.

3. That a few days prior to 17th August, the sheriff had an
execution against *Wetherhead* for about $40,00, and spoke to him
near plaintiffs' house about paying it. The object of this was to
infer that plaintiffs were informed of *Wetherhead's* being in debt.
But alone, it does not tend to prove the fact; and if it did, plaintiffs
were also creditors, as appears by the case, and might secure
their debt without suit.

4. That one of the attaching creditors, in presence of defend-
ant, informed *Fessenden* they had attached all the property on the
farm, and requested him to designate his—and that he claimed the
whole except the waggon and harness. And it did belong to him,
and would have been recovered, had not the principle of *fraud
in law* applied to a part of the case. That he did not recognise
the application of this principle, is no evidence of fraud in fact.

3. *The defendant further requested the court to charge,* "That if
the jury should find some of said property in possession of said
*Wethhead,* to be his property, but so mixed with the property of the
plaintiffs that the officer on due enquiry could not distinguish
them, the plaintiffs could not maintain an action against the officer
for taking their property until notice, and a demand of their property."

oo

Windham, Feb. 1828.  }
Holbrook et al. vs. Hyde.  }

From the case it appears that the greatest part of the property on the farms belonged to the plaintiffs—That *Wetherhead* was not pretended to be on as owner of the land—That no application prior to the attachment was made to *Holbrook* & *Fessenden* to learn in what capacity he was there—That he was notoriously a bankrupt when he went there—and that he was no connexion, or debtor of plaintiffs, before he went on. From these facts the *prima facie* presumption was that all the property was *Holbrook's*; and a creditor attaching, must do it at the peril of doing away this presumption. And the only way in which it was done, as to any part, was by the principle of *legal fraud*. This put the defendant to prove an actual purchase by *Wetherhead*. But the principle of *confusion* does not apply to the case. The person who puts his property in *confusion* loses his own—but in this case it is contended he shall gain the whole. The principle of *confusion* does not apply to chattels which in their nature are easily distinguishable—Neat cattle are distinguishable by their size, age, colour, and natural marks and sex. The common cases are money and grain. Though in one case, it has been extended to articles of domestic use, where from the nature of the case, and of the use, the goods could not be distinguished—but this case is not even authority in a similar case here.

4. By the charge it was left to the jury to find what were the contracts between plaintiffs and *Wetherhead*—and it must now be taken that they found them as contended for by plaintiffs. And this is to be kept in view in the investigation of the whole case.—And it is not perceived that any objection can be made to the conclusion drawn from this fact by the charge.

5. The charge refers all the evidence of *fraud in fact* to the jury. They do not say that there is no evidence—but that the court does not recollect sufficient evidence of *fraud in fact* to require remark; but refers it to the recollection of the jury, under the definition given of *fraud in fact*, as applied to this case. Cases of this kind are beneficial to the land-owner and tenant; and the conduct of parties placed in this situation, when from the necessity of the case, a mutual confidence must exist, and which precludes calling witnesses on every occasion, is not to be unfavorably con-

strued. Every transaction which may {Windham, Feb. 1828. be honest, is to be so taken ; and *fraud* {*Holbrook et al.* vs. *Hyde.* is not to be presumed. And to find *fraud in fact*, it must appear that the plaintiffs "set up a claim to this property, which really belonged to *Wetherhead*, with intent to keep it from his creditors." And this the jury have negatived.

HUTCHINSON J. delivered the opinion of the court. The only questions now litigated, upon this long case, arise upon the charge of the court to the jury, and their refusal to charge as requested by the defendant's counsel. The defendant having attached the property in question upon writs against *Ira Wetherhead*, the cardinal point in dispute is, whether the property belonged to the plaintiffs, or so belonged to said *Ira*, as to be liable to attachment for his debts. The facts attempted to be proved, on both sides, and which are necessary in their character at least, in order to determine the instructions to the jury, to which either party might be entitled, appear in the case spread out at full length. Yet the opinion now to be expressed will be understood with only a concise reference to those facts.

The counsel for the defendant contend, and requested the court to instruct the jury, that the plaintiffs showed no valid consideration for the property. This was refused by the court.

This request would seem to relate to the weight of evidence ; but probably it was not so intended ; but rather that they had produced no testimony to show that they paid a valid consideration for the property. If by this is meant that property which the plaintiffs purchased of *Wetherhead*, and drove to *Brattleboro'*, into their exclusive possession, and which was not attached by the defendant, and is not sued for in this action, the refusal was correct ; for no instruction should ever be given upon matters foreign to the issue, unless it be to lay them wholly out of the question.

If by this is intended that property which never was *Wetherhead's* but which the plaintiffs placed upon their own farms in the care of *Wetherhead*, as their tenant, the refusal was also correct, for it concerns not the defendant, whether the plaintiffs paid for the property, or whether it was given to them, if it came not from *Wetherhead*, their debtor ; and his ability to pay them was not altered or affected by it.

Windham, Feb. 1828.   If by this is intended that proper-
_Holbrook et al. vs. Hyde._   ty which ever was _Wetherhead's_, and
which was attached by the defendant, and is embraced in
the present suit, the refusal to charge in that precise form
was correct; for more than that, in favor of the defendant, was
comprised in that part of the charge which secured to the defend-
ant all the property he had attached, which had ever belonged to
_Wetherhead_; and this, notwithstanding any conveyance by him to
the plaintiffs, unless there had been a visible change of possession
before the attachment. And here it should be recollected the
case shows that none was attached by the defendant which had
ever passed from _Wetherhead_ into the possession of the plaintiffs.

· The defendant also requested the court to instruct the jury,
that the acts and doings of the plaintiffs were evidence of fraud
against creditors. This was refused by the court.

'· Upon a general, without a particular, view of the case, this re-
fusal would appear erroneous, because there is testimony of such
a character with regard to some of the property in controversy.
Yet the defendant is not injured by this refusal; for if such in-
structions had been given, they would have been applicable only
to that property which was secured to the defendant by that
part of the charge which pointed out the fraud in law. This
probably led to the inaccuracy of expression in the charge. The
court, having given the defendant all the property he had attached,
that was ever owned by _Wetherhead_, upon the principle that no
sale to the plaintiffs had become complete by a visible change of
possession, say they recollect no evidence of fraud in fact that re-
quires any remarks from the court. This would have been in-
correct, if applicable to that property which yet remained in pos-
session of _Wetherhead_, after bills of sale of the same to the plain-
tiffs. It's thus remaining in his possession, and the circumstances of
the bills of sale, and part of the purchase money placed to account,
might have been proper to have been left to the jury as evidence of
fraud, with regard to that property, if a more direct and sure
course, and one sanctioned by the repeated decisions of this court,
had not already taken in favor of the defendant. And surely, af-
ter all this, no further remarks were necessary from the court.
Yet through fear of some forgetfulness or inattention of the court,

the jury were directed to give full weight   { Windham Feb. 1828.
to any such evidence recollected by them ;   { *Holbrook et al. vs Hyde.*
and were correctly instructed in what *fraud in fact* must
consist, as applicable to this case, to wit, the plaintiffs get-
ting into their custody, and claiming to own, the property that
really belonged to *Wetherhead*, with intent to keep it from his
creditors.    It would have been incorrect for the court to have au-
thorized the jury, from any testimony there was before them, to
find for the defendant, with regard to any of the property claimed
that never did belong to *Wetherhead*.   There was no testimony
that the plaintiffs knew of *Wetherhead's* indebtednesss, till a few
days prior to their taking home the steers and yearlings, which
was shortly before the attachment of the defendant.    Their
knowledge then seemed only of an execution of about for-
ty dollars.   If the defendant, or the creditors of *Wetherhead*,
would claim to hold the property which was transferred from
*Wetherhead* to the plaintiffs, and had gone into the possession of
the plaintiffs, their way would have been to have attached that ve-
ry property, and then disputed the validity of the sale.    But that
dispute could not arise upon a litigation about other property,
which never was owned by *Wetherhead*.    No testimony could a-
vail the defendant to hold,as belonging to *Wetherhead*, that prop-
erty put on to the farm by the plaintiffs, which comes short of
showing it transferred to *Wetherhead*, and no pretence of this kind
is favored by the testimony in the case.    The case of *Donoghue*
vs. *Trask*, cited by the defendant's counsel, turned upon the point
that the debtor owned the property attached.    All the right any
others had in it was merely in trust for the debtor.

The defendant further urges that the plaintiffs have suffered the
property in question to be so mixed with that of *Wetherhead* as not to
be distinguished on reasonable enquiry, and, therefore, they have
no right to claim it,without first giving notice which was theirs,and
making demand.    The court refused on request, so to instruct the
jury.    And this court approve of that refusal.    The defendant re-
lies upon the case in 7 *Mass. Rep.* 123.    The doctrine of that
case is applicable only to such property as contain no natur-
al or artificial marks by which it can be distinguished.   In
that case, the property was the furniture about the house, where

two families resided. Grain and goods in a store, generally, if mixed with others of like kind, cannot be easily distinguished. But not so of cattle. They are not so similar in their appearance as to create uncertainty in the minds of those who have known them. The defendant might have learnt from those who sold any of these to *Wetherhead*. Indeed, the same witnesses who would aid him on trial, could direct him before he attached.

The defendant objects to a part of the charge as consisting of abstract principles, without applying them to the case ; and cites the case of *Mason* vs. *Silver*, where such a course is deemed incorrect. This objection is found by reading the charge in detached parts only ; when reading the whole, removes the difficulty. Allusion is made to the designation of the *fraud in law* : but the observations upon that head are immediately applied, and the property named, which the jury might probably consider within that principle.

The defendant urges the hardship that the creditors should lose their debts against *Wetherhead*. Possibly there may be some other remedy in case of any equity. During the years that *Wetherhead* hired the farms at a given rent, there is no more equity against the plaintiffs than against any other persons. During the years in which *Wetherhead* was a hired man of the plaintiffs, as they themselves avow, possibly they might be holden to pay for the salt to give the cattle on the farm, and perhaps other things of that character. Of this, however, we risk no opinion.— The circumstances of such claims but partially appear on the trial of this cause.

Upon the whole, the Court consider the verdict correct, in reference to the facts disclosed in the case, and no correct charge would produce a different verdict. The judgment of the County Court is affirmed with cost.

*Everett*, for plaintiffs.