## John W. Russell v. Orson Smith, et al.

1. Pleading; *Replevin; Reply.* The case of *Wilson v. Fuller*, 9 Kas., 177, 189, et seq., with reference to the necessity for a reply to a certain answer in an action of replevin, and waiver of reply, referred to and followed.

2. Attachment; *Interest of Attachment-Debtor; Possession of Copartner.* Where two copartnership firms own cattle, one firm composed of O. S. and R. S., and owning 419 head of cattle, and the other firm composed of O.S. and T., and owning three head of cattle, all of said cattle being in the possession and under the control and management ·of O. S., and being herded together in one herd, and the firm of O.S. and T. owes the firm of O. S. and R. S. for keeping said three head of cattle and other cattle belonging to O. S. and T., and O. S., by agreement with T., and with certain creditors of T., assumes the payment of certain debts owing by T. to said creditors, and O. S. is to receive his pay from the proceeds of the sales of said cattle belonging to the firm of O. S. and T.: *held*, that neither the three head of cattle nor the 419 head are liable to be taken from the possession of O. S. by the sheriff of the county under an attachment against T. and in favor of another creditor of T.

3. ———— *Refusal of one Partner to designate Interest of another Partner.* And although O.S., who was eight miles away from the cattle, was applied to by the sheriff to point out the interest of T. in said cattle, and O. S. refused, yet this refusal did not give the sheriff any right to take the cattle from the possession of O. S.

4. ———— Nor did the firm of O. S. and R. S. forfeit all their right to said 419 head of cattle because of said refusal of O. S.

5. Damages; *Replevin; Decrease in Value of Property.* It is not error for the district court in an action of replevin, where the plaintiff owns the property replevied, and judgment is rendered in his favor, to allow the plaintiff to recover damages for the decrease in the market value of the property during the time that the defendant wrongfully detained the property from the plaintiff.

*Error from Saline District Court.*

Replevin, by *Orson Smith* and *Rodney Smith* for 422 head of cattle. *Russell*, as sheriff of Saline county, received an order of attachment issued to him in an action then pending in Leavenworth district court, wherein Chas. F. Tracy & Co. were plaintiffs and John E. Tappan was defendant, and

he levied said order of attachment on the cattle in question
and took them into his possession. *Smith Brothers* claimed
ownership and right of possession, and brought this action
of replevin to recover possession. *Russell* answered by gen-
eral denial, and that he was sheriff of Saline county, and that
the cattle were the property of said Tappan, and that he (the
sheriff) had taken them into his possession by virtue of said
order of attachment, etc. There was no reply. Trial at the
April Term 1872. The court found the issuing of the at-
tachment; that the defendant as sheriff had taken the cattle
into his possession by virtue thereof, and held the same by
virtue of said attachment at the time of the replevin ; that
the cattle had been replevied and delivered to plaintiffs; that
the average value of the cattle at the time of the levy by the
sheriff was $39 per head ; that at the time the cattle were
returned to the plaintiffs under the order of replevin they
were worth $30 per head ; that the plaintiffs owned all of
the cattle except three head, which three head belonged to
said Tappan and O. Smith, one of the plaintiffs; that at the
time of the levy of the attachment and the replevin, the cattle
replevied were all one herd; that said Tappan and O. Smith
owned a lot of cattle which were then, except three head, in
Ottawa county; that the sheriff requested said Orson Smith,
before the levy of the attachment, to designate his own cattle,
assuring him that none of his (Smith's) cattle would be dis-
turbed if he (Smith) would inform said sheriff which they
were. Judgment in favor of the plaintiffs for the possession
of the cattle, and for $3,000 damages, (the amount claimed in
the petition.) *Russell* brings the case here on error.

*Stillings & Fenlon*, for plaintiff in error:

We contend, first, that on the pleadings the defendant be-
low was entitled to judgment; that Russell was, on the
findings, entitled to a judgment for the return of the three
head of cattle, and costs.

When Smith was requested to designate Tappan's interest
in the cattle, and used language to induce the sheriff to be-

lieve that Tappan had an interest in the cattle, but failed and refused to point out what that interest was, the sheriff was justified in taking possession of all the cattle, and that the Smiths could not consider or treat him as a wrongdoer, at least until they had pointed out to him their property so as to enable him to separate the property and deliver to them their own; 28 Maine, 424; 33 N. H., 466; 11 Metcalf, 493; 8 Allen, 94; Drake on Attachment, § 199. It was the right and duty of the sheriff to seize the property in which Tappan had a partnership interest; 2 Lead. Cases in Equity, 336, 339; Drake on Attachment, § 248. The fact of that interest being only a partnership interest in three of the cattle can make no difference any more than if but three of the cattle had been owned by Smith, and the balance had all belonged to Smith and Tappan; the declarations of Smith to the sheriff, that Tappan had an interest, would justify the levy, although there had been no interest in Tappan, and estop Smith from claiming damages for seizing property in which they thus led the sheriff to believe Tappan had an interest subject to levy.

Smiths at no time offered to designate their cattle to the sheriff, nor demanded a delivery of their cattle, and yet claimed and recovered judgment in the court below for the difference in the value of their cattle, caused by a decline in the general cattle market, while they had thus held out to the sheriff that Tappan had an interest in the cattle, and neglected and refused to designate what share or portion of the cattle belonged to them. If this is the law of the case, it will hardly be claimed in future that law is the perfection of reason.

The pleadings admit the ownership of the cattle in Tappan at the time of the levy, and of course all evidence was improperly received, and the evidence as to damages was objected to. The damages assessed were merely *imaginary*—such as *might have* been suffered; but that they were *actual* damages, flowing necessarily and legitimately from the detention, is not shown by the testimony. And on the finding of the ownership of the three head of cattle to be in Tappan

and Smith, we were entitled to a judgment for their return or the value, and the court erred in refusing it.

*Riggs, Nevison & Simpson,* for defendants in error:

1. The pleadings do not admit the ownership of the cattle attached to have been in Tappan. Under the code a reply was not necessary unless the answer contained matter that was both new and material; (§ 128.) A material allegation is one essential to the defense, which could not be stricken from the pleading without leaving it insufficient; Code, § 129. In replevin in *detinet* under a general denial, property in the defendant can be shown; 19 Ohio, 29; 6 Mich., 156; 35 N. H., 9; 10 Ohio, 344. Besides, this objection comes too late. Had it been made in the court below it could have been obviated by an amendment of the pleadings. A point cannot be insisted upon *here* which was waived *there*.

2. The sheriff had no right to take possession of Smith & Tappan's partnership property on attachment for an individual debt of Tappan's. The copartner Smith had a lien upon the stock until the settlement of the partnership debts, and he was entitled to the possession of it: Parsons on Copartnership, 350; Parsons on Mer. Law, 188; Parsons on Contr., 107; 43 N. H., 290; 20 Penn. St., 228; 43 Penn. St., 456; 16 Johns., 102. It is undoubtedly true, that where property belongs to joint owners, not partners, the sheriff may take possession of it in payment of an individual debt: Drake on Attachment, § 248, 3d ed. But Drake refuses to apply this rule to partnership property, " concerning which," he says, "there is much diversity of decision." We are not disposed to deny that there are some decisions of respectable courts in which a contrary rule is adopted; but these decisions were given, it is believed, in states where the chattels of the debtor cannot be reached by garnishment. In this state the person in possession of chattels may be required to disclose the debtor's interest therein, and the notice of garnishment makes him liable to the plaintiff for the value of the chattels belonging to the debtor. Code, § 206. There is therefore, in

this state, no occasion to seize the *corpus* of the partnership property.

In the present case it is in evidence that Tappan was owner of a partnership interest in *three head* of the 422 head attached, subject to the lien of a mortgagee in possession, and subject also to the lien of the agister. We submit that such an interest is a mere "shadow of a shade," and too minute to be reached by a levy, and concerning which the maxim of "*de minimis,*" fully applies.

3. The sheriff did not ask Smith to designate the cattle that belonged to the Smiths. He asked Smith to point out what interest Tappan had in the herd of cattle. This Smith declined to do until he could examine his books. This was a reasonable refusal. Smith only asked for time to examine the complicated account relating to these Smith & Tappan cattle. He could not answer without the examination. The sheriff should have given time for this investigation. Instead of this, he levied at once on the cattle as Tappan's property. This action of the sheriff was indefensible on every ground. Smith's answer acquainted the sheriff with the fact that the Smiths had an interest in that herd.

Smith was under no obligation to point out the cattle belonging to defendants in error, even if he had been requested to do so by the sheriff, *which he was not.* A man does not hold his property by such a frail tenure, that he forfeits it whenever he refuses to answer every impertinent question that a sheriff may propose. In the present instance no confusion of property was possible; and Smith was under no obligation to enlighten the ignorance of the sheriff. But there is another important fact. The cattle were separately branded. This was a brand known to many. It should have been known to the sheriff. It was known to the herdsman, Clark, who was afterward made the sheriff's bailiff to keep the attached property. Clark says he could have easily pointed out to the sheriff the Tappan cattle, but that he was not asked to do so.

4. It was in evidence, and found by the court, that the

cattle belonging to Smith & Tappan had been wintered by the defendants Smith & Smith, and that no settlement had been had for the cost of keeping and tending. Under such circumstances the Smiths, under the law of Kansas, had a lien on these cattle; Gen. Stat., ch. 58, § 2. It was not therefore subject to attachment. Drake, § 245. The Smiths owned 419 head of the cattle in entirety. Orson Smith had a partnership interest in the other three head, and also held them as mortgagee; and besides, the Smiths held them under an agister's lien, and were entitled to the right of possession of the three head as well as of the 419 head.

But even if the court should be of the opinion that the defendant below was entitled to a return of the three head of cattle in which Tappan had a *shadow* of an interest, it will not be necessary to remand the case. The court can render such judgment as the inferior court should have rendered.

5. In actions of replevin against a sheriff, if the plaintiff succeeds and recovers the chattels, he is also entitled to damages for the depreciation in the market value of the property while in the hands of the sheriff, and for interest on the value of the personal property for the time in which the plaintiff was deprived of its possession: 8 Bosw., 486; Sedgw. on Dam., 587, 593; 7 Wis., 465; Morris on Replevin,·139; 16 Mass., 465; 14 Johns., 385. The evidence and findings would have justified a larger judgment for damages. The court finds (and this was supported by the evidence) a depreciation in the value of the cattle of nine dollars per head during the time the sheriff had possession of the stock. To this should be added interest on the value of the herd and necessary expenses incurred in recovering possession of the property. The plaintiffs below are entitled therefore to a judgment for $4,000, had the court not been restricted to $3,000 by the *ad damnun* clause of the complaint.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin for 422 head of cattle. Judgment was rendered in favor of the

plaintiffs below, (defendants in error.) The plaintiff in error claims that on the pleadings, with or without a trial, the judgment below should have been rendered in his favor; and this he does on the ground that he set up new matter in his answer constituting a complete defense to the plaintiffs' action, to which answer the plaintiffs did not reply. No such question as this was raised in the court below, but the trial there proceeded in all respects as though the new matter set up in the defendant's answer was duly controverted. Two questions are really involved in this question: *first*, was a reply necessary? *second*, if so, did not the defendant waive the reply by going to trial without it, and by not in any manner raising the question of its necessity in the court below? Both of these questions have been answered in the case of *Wilson v. Fuller*, 9 Kas., 177, 189, et seq. We adhere to that decision. A reply was not necessary in this case. And if it had been the defendant below waived it.

All of said cattle except three head belonged to the plaintiffs below as copartners. These three head belonged to another copartnership consisting of Orson Smith (one of the plaintiffs below) and one Tappan. The only interest that the defendant below ever had in any of said cattle was an interest which he obtained as sheriff of Saline county by attaching said cattle as the property of said Tappan. If Tappan had owned said cattle, and there had been no liens in favor of the plaintiffs, or either of them, existing against the cattle, the judgment in this case should have been in favor of the defendant below. But as Tappan had no interest in any of the cattle, except said three head, the defendant below, as plaintiff in error, now sets up other grounds than that of ownership or the right of possession on the part of Tappan as a foundation for his (plaintiff in error) supposed right of recovery. He claims that he should recover judgment for the whole of said cattle. He claims that he may recover upon the following grounds: As Tappan had an interest in said three head of cattle, he claims that he as sheriff of said county had a right to attach them and hold them for the satisfaction of Tappan's debts; and as these

three head of cattle were kept and herded with the other 419 head which belonged to the plaintiffs below, and as said Orson Smith neglected and refused to point out the interest of Tappan in said cattle, he claims that he as sheriff had a right to attach the whole of said herd, and hold them for the satisfaction of Tappan's debts. Had the sheriff, by virtue of the writ of attachment which he held against the property of Tappan, a right to take possession of said three head of cattle, and to hold them for the payment of Tappan's debts? We think not. Orson Smith not only had his partnership interest in said three head of cattle, but he and his brother (the other plaintiff below) had other interests in said cattle. The firm of Smith & Tappan owed the firm of Smith Brothers for keeping said three head of cattle and other cattle belonging to Smith & Tappan during the fall, winter and spring, before said attachment was levied upon said cattle. And for thus keeping said cattle said Smith Brothers had a lien upon the cattle, (Gen. Stat., 548, § 2,) which lien neither Tappan nor Tappan's creditors could divest except by paying the amount due for keeping said cattle. (See Drake on Attachment, § 245.) Also, Orson Smith by agreement with Tappan and with certain of Tappan's creditors assumed the payment of certain debts, which Tappan owed to said creditors, and Smith was to retain enough out of the proceeds of the sale of said cattle to pay himself therefor. This constituted another lien on said cattle. Orson Smith had the actual custody, care and control of said cattle. His possession however we suppose was the possession of the Smith Brothers, and neither Tappan, nor Tappan's creditors, nor the sheriff acting for Tappan's creditors, had any right to disturb that possession until all of said claims against Tappan were paid. Whether either would then have any right to disturb Orson Smith's possession, we do not decide. There would still be the partnership interest of Orson Smith. This partnership interest alone might be sufficient to prevent the sheriff from taking possession of the cattle. The above

claims were really charges upon said cattle in favor of Orson Smith, and of the Smith Brothers. When the sheriff inquired of Orson Smith what interest Tappan had in said cattle, the cattle were eight miles away, and of course Smith could not point them out or designate them. And Smith told the sheriff that he could not tell what interest Tappan had in the cattle without consulting his books. And there is nothing in the case which tends to show that this was not true. It does not appear from the record what precise interest Tappan had in said cattle, nor does it appear that Smith then knew or has at any time since known Tappan's precise interest in the cattle. It appears that Smith could have known what said interest was by examining his books, but he refused to do so, or to tell what the interest was. We do not think that this refusal authorized the sheriff to attach said cattle and take them from the custody of Smith. (In this connection see *Treat v. Barber*, 7 Conn., 275; *Holbrook v. Hyde*, 1 Vt., 286; 47 N. H., 502; 28 Maine, 429.) The creditors of Tappan had another and an ample remedy by a proceeding of garnishment. (Gen. Stat., 666, § 200, et seq.)

We suppose it is hardly necessary for us to say that if the sheriff had no right to take possession of said three head of cattle under his writ of attachment, he had no right to consider that the Smith Brothers forfeited their whole herd simply because Orson Smith refused to point out to the sheriff Tappan's interest in said three head of cattle. The three head were differently branded from the others, and could easily have been pointed out to the sheriff by the herder, if the sheriff had inquired of the herder.

The damages allowed by the court were not excessive, nor speculative. The court allowed damages for a decrease in the market value of the cattle during the time that they were wrongfully detained by the defendant from the plaintiffs. This was right. (*Young v. Willett*, 8 Bosw., 486; *Rowley v. Gibbs*, 14 Johns., 385; *Allen v. Fox*, 51 N. Y., 565; *Beveridge v. Welch*, 7 Wis., 465; *Gordon v. Jenney*, 16 Mass., 470.)

There was evidence however tending to show that the damage was much more than the court allowed.

The judgment of court below is affirmed.

All the Justices concurring.