The cause stood over nisi, and at the following November term in Suffolk, the opinion of the Court was delivered by
Parsons, C. J.
(after giving a summary of the facts, and of the several objections made by the defendant’s counsel.) We shall consider these objections in their order, after making some observations on the duty of an officer having a writ to serve.
And it is our opinion, that when there is any reasonable ground to induce an officer to believe, that in making an attachment, or in seizing upon execution, he may mistake, and expose himself to an action for damages, by attaching or seizing goods not the property of the debtor, he may insist on the creditor’s showing him the *107 debtor’s goods, and also on being indemnified for any mistake he may make in conforming to the creditor’s directions, (a)
But we are also satisfied, that if the officer does not request the creditor, his attorney or agent, to show him the debtor’s goods, or to indemnify him; but agrees to execute the precept of the writ as well as he can, he is answerable to the creditor, if he does not attach the debtor’s goods, which he might have found and attached; if the creditor be injured by his neglect.
Now, in the case at bar, the deputy sheriff did not request the plaintiff, or his agent, to show him the debtor’s goods, or to indemnify him; but expressly declared, on Saturday evening, that he would attend to the business immediately, and secure the debt, if it were possible. He therefore took *on him- [ * 127 ] self the discovery and attachment of sufficient effects of the debtor, if practicable. Goulding’s furniture was in his actual possession, in his dwelling-house; he ought, therefore, to have attached that furniture; and if he had attached some furniture of other persons, which was in Goulding’s house, and mixed with his, when the right owner claimed his part, the deputy sheriff might have restored it, without subjecting himself to an action by the plaintiff. And if the goods of a stranger are in the possession of a debtor, and so mixed with the debtor’s goods, that the officer, on due inquiry, cannot distinguish them, the owner can maintain no action against the officer, until notice and a demand of his goods, and a refusal or delay of the officer to redeliver them. It is, therefore, our opinion that the defendant is answerable for the neglect of his deputy in not attaching the debtor’s furniture.
The effects attached on Heyiuood’s writ were discovered and shown to the officer by him; and if the officer, using due diligence and making all reasonable inquiry and search, would not have been able to discover them, until after Heywood had made the discovery and shown them to the officer, to be attached at his suit, we should be strongly inclined to believe that the officer would be protected against the payment of damages, for giving the preference to Heywood’s writ in his attachment of these goods. But the officer undertook to attend to the business immediately; and it is agreed that if he had, he might have discovered and attached these goods on Monday, before he received Heywood’s writ. He was therefore *108 guilty of a neglect in not making an attachment, which is to the plaintiff’s prejudice ; and in our opinion, the defendant must answer.
The not attaching the hides in the vats of Goulding, deserves a distinct consideration. The sheriff is not answerable for any default of his deputy, unless it be a default in executing the powers lawfully derived from the authority of the sheriff, under which his deputy acts. For where a deputy undertakes any busi- [ * 128 ] ness not resulting from the * duties of his office, the sheriff is not responsible; for, in this respect, he is not the deputy of the sheriff. How far the deputy was guilty of loches in his office, in not attaching the hides, is the remaining question.
The practice of attaching the effects of a defendant, and holding them to satisfy a judgment, which the plaintiff may recover, when, perhaps, judgment may be for the defendant, is unknown to the common law, and is founded on our statute law, explained by a usage founded in the ordinances in force under the colonial charter.
At common law an attachment, as part of the service of process in a civil suit, is a species of distress, in which the effects attached were the ancient vadii or pledges. (2) When the defendant did not appear on a summons to answer to the plaintiff, an attachment issued, and his chattels were seized by the sheriff to compel his appearance ; but when he had appeared, he was entitled to his chattels in the same plight in which they were attached; if he did not appear, but made default, the chattels attached were forfeited.
By the statutes now in force, there is no express provision that an attachment may go before a summons; but the form of a writ of attachment against the goods and estate is prescribed as an original process, and the attachment of goods and estate, by virtue of such process, is recognized, and the sheriff is obliged to hold them attached until judgment; and for thirty days after, if the plaintiff have judgment, that the estate attached may be applied to satisfy his judgment. (3)
However, by the colonial ordinances, (4) it was ordered that it should be at the liberty of every plaintiff to take out either a summons or an attachment against the defendant. But under the colonial charter, the attachment was for some time merely a distress, to compel an appearance and an answer; and when the duty was pel formed, the distress was returned. Afterwards an ordinance passed, (5) which, reciting as an inconvenience of re- * 129 ] leasing the goods attached *on the appearance of the *109 party, that the plaintiff when recovering judgment might not find them to seize on execution, ordered that the attachment should remain until the judgment was satisfied, provided the execution was sued out and executed in one month after judgment. This practice was sanctioned by the provincial act of 13 Will. 3, c. 11, and is now law by the statutes in force.
But what goods might be the subject of attachment, or distress, must be determined by the common law; no direction on this point being given by any statute. At common law all distresses, as well those to compel appearance as to perform any other duty, must, when the duty is performed, be restored in the same plight in which they were taken. For this reason, goods could not be distrained which, in consequence of the distress, could not be returned in the same plight in which they were taken; as sheaves of corn, or hay, in a cock or barn ; because they would be injured, as the grain of the sheaves would be shattered. But the sheaves or hay in a cart might be distrained in the cart, because by removing them with the cart no damage might happen to them. (6)
From the application of this maxim to green hides in vats, it is manifest that such hides could not be distrained, as they would be materially injured by being removed; and if the defendant should recover judgment, they could not be returned to him in the same plight in which they were taken from him. The deputy sheriff was therefore guilty of no loches in not attaching and removing the hides from the vats.
But the plaintiff’s counsel has argued that he might have permitted them to remain in the vats until tanned, as the debtor offered him a lease. The deputy was not, however, by the duties of his office, obliged to take a lease, or to cause the hides to be tanned. Without the debtor’s consent he could not lawfully do it; and with his consent he would have acted by authority derived from the debtor, and not from the sheriff; and the sheriff is not responsible, because *his deputy did not do what by [ * 130 ] law he was not obliged to, unless under color of his office he does what the law prohibits. We are, therefore, of opinion that the defendant is not answerable to the plaintiff, because the deputy sheriff did not attach the green hides in the vats.
In the argument the plaintiff’s counsel have compared the attaching of these hides to the attaching of perishable articles, or of live cattle, which, it was contended, might lawfully be attached. There is no direct analogy between the cases; for goods perishable in their nature, may not perish until after judgment, and certainly they may *110 not be injured by the mere attaching and removing of them. The same observation applies to live cattle. But if the articles in fact perish from their intrinsic nature, or the officer is at expense in sustaining the cattle, on whom the loss shall fall, or by whom the expense shall be reimbursed, are questions to be settled when they are regularly before us.
Dana for the plaintiff.
Bigelow and F. Blake for the defendant.
In the case of Proctor vs. Rice, in Middlesex, where the defendant had recovered judgment, and the chattels attached were returned, he was allowed to maintain trover against the plaintiff, and recover the damages sustained by the temporary loss of the goods attached, according to the injury he had suffered by that loss. (b)
But inconveniences may result, and certainly have resulted, from our practice of attachments, where the suit has been pending a long time, whether the plaintiff or defendant has prevailed ; and these inconveniences have been greater, when the goods attached have been live cattle or perishable wares. If the legislature were to authorize the defendant to dissolve the attachment, on giving security to the value of the goods attached, as is the case at common law; or if the defendant refused to authorize the officer to sell them, and retain the proceeds subject to the attachment, these" inconveniences might be avoided. On the wisdom or expediency of such provisions, the legislature must determine.
The value of the furniture, which the deputy of the [*131 ] defendant * might have attached, is agreed to be one hundred dollars, and the value of the goods attached on Haywood’s suit is stated in the case to be one hundred and fifty dollars. On these two sums interest is to be computed from the return day of the plaintiff’s execution against Goulding to this time; and the amount must be inserted in the verdict instead of the sum there found; and on the verdict thus amended the plaintiff is to have judgment.

 [If the attachment be clearly unlawful, no promise or agreement to indemnify him will be of any avail and if it be doubtful, it seems that if the sheriff be requested to make the attachment, an agreement to indemnify him will be implied. — Humphreys vs. Pratt, 2 Dow & Clark, 288. — Fletcher vs. Harcott Hutton, 55. — Battersea’s Case, Winch. 48.—Betts vs. Gibbins, 2 Ad. & E. 57. — Adamson, vs. Jarvis 4 Bing. 72 — Ed.]

 Gilb. Law of Distresses, 24

 Stat. 1784, c. 28.

 Colony Laws, page 7.

 Ibid. 144

 Gilb Law jJ Distresses, 34, 5.

 [It has been decided that no action will lie in such .case unless the original action, on which the attachment was made, was malicious and without probable cause.— White vs. Dingley, 4 Mass. 433. — Lindsay vs. Learned, 17 Mass. 190 Stone vs. Swift, 4 Pick. 392. — Pierce vs. Thomson, 6 Pick. 193.—Ed.1