# Uriel Crocker et al. versus Thomas J. Baker and Trustees.

The provision in *St.* 1822, *c.* 93, [Revised Stat. *c.* 90, § 58,] authorizing the sale of goods attached on mesne process, upon the request of either of the parties to the action, is not limited to live stock and goods of a perishable nature, but extends to any chattel which is liable to depreciate greatly in value by keeping, or which cannot be kept without great and disproportionate expense.

The certificate of the appraisers appointed under the statute, that the goods attached are liable to depreciate, and that the keeping of them will require great expense disproportionate to their value, is conclusive evidence of these facts, in justification of a sale by the officer.

Notice to the defendant, that the plaintiff has applied to the officer to make sale of the goods on mesne process, and that the defendant may appoint one of the appraisers, may be given by leaving a written notification at the defendant's usual place of abode.

The giving a credit to the purchaser of the goods will not invalidate the sale ; but *it seems* it will render the officer responsible for the price.

Where the defendant in a trustee process is defaulted at the return term, and the trustee appears at the same term and submits himself to an examination upon oath, and the case is continued in court for the purpose of determining whether he is chargeable or not, and he is ultimately discharged, he is entitled to tax costs for his travel and attendance, in the same manner as a prevailing party.

Assumpsit. The action was entered in the Court of Common Pleas, at September term 1833, at which term Baker, the principal defendant, was defaulted, and the trustees filed their several answers, denying generally that they were trustees of Baker when the process was served on them. The action was continued to the then next December term of the same court, and in the vacation the respondents voluntarily submitted to an examination on oath, in answer to the interrogatories proposed by the plaintiffs. This examination was made and sworn to in the country, by the consent of the plaintiff, and was duly filed in the Common Pleas, at December term 1833 ; and after argument before all the justices of that court, the respondents were adjudged not trustees and were allowed costs. From this judgment the plaintiffs appealed, and they entered their appeal in this Court, at April term 1834.

John Kimball, one of the respondents, stated in his answers, that on the 17th of July, 1833, he, as a deputy sheriff, attached certain goods of Baker on several writs against him ; that on the 23d of July, application, in writing, was made to him

Crocker
v.
Baker
and Trs.

by the attaching creditors, to have appraisers appointed and to have the goods sold ; that of this fact he gave Baker due notice in writing, which he left at Baker's usual place of abode, in Lowell, and requested him to select one appraiser ; that Baker having neglected to do so, the respondent appointed two appraisers on the 24th of July and the attaching creditors a third ; that on the same day the appraisers, being duly sworn, examined the goods, and made a schedule of them, and set down the appraised value of them, and certified that in their opinion the goods were " liable to perish, waste, or greatly depreciate in value, and that the keeping of the same would require great expense, disproportionate to the value of said property ;" that thereupon the respondent proceeded to sell the goods at public auction, on the 1st of August ; that some of the goods were sold on credit, and some for cash; that the amount of the proceeds of the sale was $688·63, which sum the respondent applied to defray the expenses of the sale and in part-satisfaction of the executions of the attaching creditors, the whole amount of which exceeded $1,000 ; that the respondent believed that Baker was not at home when the notification was left for him, but whether he had absconded or not, or whether he ever received the notification, the respondent could not say ; and that subsequently Baker, together with the attaching creditors, signed a written agreement assenting to the sale and other proceedings, but the respondent did not know at what time this assent was given.

E. P. Offutt and T. Sweetser, two other respondents, stated that they were purchasers of some of the goods ; and they adopted the answers of Kimball, so far as relates to the ownership and disposition of the property.

By the schedule made out by the appraisers, it appeared that the property attached and sold on mesne process consisted of a great variety of articles, being the stock of a dealer in fancy goods.

*Feb. 27th, 1834.*

F. *Hilliard*, for the plaintiffs.

W. W. *Fuller*, for the trustees.

*April term 1835.*

MORTON J. afterward drew up the opinion of the Court The plaintiff attempts to charge the officer who sold, and the other trustees who purchased, the goods of the principal de-

Crocker
v.
Baker
and Trs.

fendant. His ground is, that the sale was unauthorized ; that it dissolved the former attachments ; that the purchasers acquired no property under it, and therefore that the officer is trustee for the proceeds of the sale, received by him, and the several purchasers for the goods remaining in their hands. The first step in support of this claim is to show the invalidity of the sale. For if the officer's proceedings were according to law, the fruits of the sale have rightfully been applied, under prior attachments. Unless these were dissolved, the plaintiff has no right to interpose.

Previous to the statute of 1822, c. 93, the officer holding goods under attachment had no authority to sell them, even with the consent of the parties to the suit, but whatever might be their nature or character, was bound to retain them till after judgment, in order that they might be seized on execution. *Rich et al.* v. *Bell*, 16 Mass. R. 294. Hence perishable chattels and such as could not be preserved and restored in an unchanged condition, were holden not to be attachable. *Bond* v. *Ward*, 7 Mass. R. 123. But it is very obvious that there are other kinds of chattels which may deteriorate, or become unsaleable, by keeping, or which it would be very expensive to keep. To remedy the evils arising in all these cases, the above statute was enacted.

The first section authorizes a sale before judgment, by the consent of the parties to the suits upon which the property is attached. It extends to all kinds of personal property and is imperative upon the officer. " Whenever the respective parties shall express their consent in writing, that the same may be sold, it shall be the duty of the attaching officer to cause the same to be sold," and to retain the proceeds, " to respond the judgment to be rendered, in the same manner " as if the goods had remained unsold.

The second section provides, that " whenever any live stock, or any goods, chattels or merchandise, which may be liable to perish, waste or greatly depreciate in value, by keeping, or which cannot be kept without great and disproportionate expense, shall be attached on mesne process," " it shall be lawful for either of the parties to apply to the attaching officer, to have such goods examined and appraised ; and thereupon

it shall be the duty of such officer " to cause appraisers to be appointed in the manner prescribed by the statute. " And in case such appraisers, or the major part of them, shall be of op'nion that such property, or any part thereof, is liable to perish, waste, or depreciate, and that the keeping of the same will require great expense, disproportionate to their value, it shall be their duty so to certify " ; and to make an appraisement of the property. " And it shall be the duty of such officer, to cause the goods thus certified and appraised, to be sold," " unless security be given for the appraised value thereof."

There is no doubt that the officer complied with all the formalities required by the statute. The written notice left at the debtor's usual place of abode was sufficient. This is the common and recognized mode of giving notice and making service in this Commonwealth. As the debtor had no attorney and was not to be found, it was the only notice which could be given. And if this be not good, it will be easy for the debtor, at all times, to defeat these salutary provisions of the statute. As the debtor neglected to nominate an appraiser, the duty of nominating one for him devolved upon the officer. The sale therefore was valid, provided an occasion had oc urred which would authorize the officer to sell on mesne process.

These new provisions of law, which were recommended in *Bond* v. *Ward*, and again suggested in *Rich* v. *Bell*, were not intended to affect the liability of property to attachment ; or to change the modes of seizing property on mesne process or execution, but to regulate the treatment of it in certain cases, while under attachment, and to avoid the great expense and loss to which certain kinds of property might be liable, in the long detention which intervenes between the commencement of a suit and the final judgment. They authorize a sale in certain specified cases. The plaintiff co tends that none o. these cases had occurred, and, therefore, that the officer had no power to sell.

This section authorizes a sale, without the consent of the parties, in the following cases ; 1st, when the property attached is " *live stock* " ; 2d, when by keeping it may be " *liable to perish* " ; 3d, when it may be liable to " *waste* " ; 4th, when it may be liable " *greatly to depreciate in value* " ; and

5th, when it " cannot be kept *without great and disproportion-ate expense*." Who is to determine when a state of things has occurred which authorizes a sale ? Are the parties or either of them ? Is the officer ? Or must he proceed at his peril, liable to be made a tort-feazor, by proceeding or refusing, according as the facts may be subsequently determined by another tribunal ? This would be perilous indeed to the officer. But we think the statute exposes him to no such hardship. It provides a form and points out the means of proceeding, to have the questions determined.

If either of the parties suppose that the situation or state of the property attached is such as to require a sale by the rules prescribed in the statute, he may " apply to the attaching offi-cer, to have such goods examined and appraised. And there-upon it shall be the duty of such officer " to proceed in the manner mentioned in the statute, to have appraisers appointed and sworn. " And it shall be the duty of such appraisers " to judge whether any of the events have occurred which re-quire a sale of the property attached ; and if so, to appraise the same, and to certify their opinion and appraisement to the attaching officer. " And it shall be the duty of such officer, to cause the goods thus certified and appraised, to be sold," un-less security be given according to the statute.

It is manifest from these provisions, that the power of judg-ing whether the state of the goods attached requires a sale on mesne process, is not vested in the officer. This power is given to a tribunal to be constituted expressly for the pur-pose. The officer cannot even institute an inquiry. He can only act on motion of one of the parties. If neither of them applies to him, the law requires him to retain the goods in kind, to meet the execution. But if either of the parties make the proper representation, he is bound to proceed. It is the right of either party to have the inquiry made and the question settled in the way provided in the statute. And the proceedings of ap-praisers duly appointed are conclusive upon the officer. If they certify that a case requiring a sale exists, he is bound to sell, unless security be given. But if they certify that no such case exists, he has no authority to make sale. He has no option. If a bond with sufficient sureties be offered, he is bound to re-

ceive it and restore the goods to the debtor. The duty of the officer which is specifically pointed out, is, throughout, ministerial and imperative. If he follows the directions of the statute, he will be justified by it. If he violates them, he will be officially responsible.

It will not be necessary, if useful, to inquire whether the act of the appraisers is to be denominated a judicial or a ministerial act. The statute gives them important discretionary powers. Their determination, like that of appraisers of real estate in the levy of an execution, is, for many purposes, conclusive, and will always furnish a rule for the government of the officer, which he will be fully justified in following.

It is true that fraud and corruption vitiate every thing which they contaminate. But there is nothing in the case which has the slightest tendency to show error or mistake, much less corruption, in the appraisers. Indeed were we, instead of regarding their opinion, to revise their proceedings, we should, at once, come to the same conclusion. The most cursory inspection of the schedule of the property attached, will show, that the interest of the parties and the directions of the statute, alike demanded an immediate sale.

We do not perceive that the credit given by the officer forms any objection to the validity of the sale. The goods would not sell for less on a credit than they would for cash. The officer might, and probably would, make himself responsible for the price. But neither debtors nor creditors would be liable to suffer. Nor does the statute expressly or by implication, prohibit this mode of sale.

This case is distinguishable from *Prouty* v. *French*, 2 Pick. 586. There other objections were raised, besides the credit given. The goods never were delivered but retained as security, and might again revest in the officer, to be sold a second time, perhaps under unfavorable circumstances. It was in effect a conditional sale which never had been, and possibly never would be, completed.

That sale, too, was regulated by a statute entirely different from this. There a speedy sale was indispensable. The proceeds were needed for the immediate satisfaction of the execution on which the sale had been made. Here the object is to

hold them, in some form or other, till judgment shall be rendered. In short, we can see no analogy between the two statutes or the two cases. The objections which were fatal in that case do not apply to this.

The proceedings of the officer being legal, the property vested in the purchasers ; the officer was justified in applying the proceeds to the satisfaction of the executions, and all the trustees must be discharged.

Costs having been allowed to the trustees, a question arose as to the rule of taxation ; upon which the opinion of the Court was delivered by

Oct. 22d,
1836

Morton J.   By *St.* 1794, *c.* 65, § 3, trustees, appearing at the first term and by their answers denying that they have any effects of the principal, are, upon their discharge by the court, to be allowed their " legal costs." *Chapman* v. *Phillips,* 8 Pick. 27.   But what shall be deemed " *legal costs,*" is the question between the parties.   The plaintiffs contend that the trustees resemble witnesses more than parties, and should be allowed pay for attendance, only while they actually attend.   But the trustees insist that after the default of the principal, they assume the character of parties and are obliged to be in court, at all times, by themselves or their representative, and are, therefore, entitled to the same costs as other parties.   Trustees certainly have, in many respects, the rights of parties.   They may, by their appearance and on their motion, have the action continued.   They may also appeal from the judgment of the Common Pleas in relation to them ; and such appeal will bring not the trustee question only, but the whole action before this Court.   When trustees are *charged* or *discharged*, they cease to have any further interest in the suit, and afterwards they can, in no light, be regarded as parties or have any claim for costs.   *Hoyt* v. *Sprague & Trs.* 12 Pick. 414.   But when the principal defendant has been defaulted, and the cause is continued in court for the purpose of determining whether the trustees are chargeable or not, they become the litigant parties ; and if they prevail, " the court shall award them their legal costs," to be taxed in the same manner as the costs of other prevailing parties are taxed.   The

<div style="float:left">Crocker<br>*v.*<br>Baker<br>and Trs.</div>

expression " *legal costs*," which by its use in the statutes and in courts, has acquired a precise definition, means costs to be taxed according to the fee bill.

The trustees cannot be allowed any thing for counsel fees or for preparing their answers. As in case of ordinary parties, the taxable costs are to be taken, however incorrect the assumption, to be a remuneration for these and all other expenses.

The rule is different where the trustees are charged. There may be no good reason for the distinction ; but the statute of 1829, *c.* 128, expressly allows them to retain out of the funds attached, " an amount sufficient to pay their reasonable counsel fees and other necessary expenses," to be determined by the court. Before this statute, trustees who were charged and could not recover taxable costs, had no means of remunerating themselves. *Adams v. Cordis*, 8 Pick. 270. And unless the legislature think proper to interpose, trustees who are discharged can recover only such costs as are allowed to other prevailing parties.