# GRAFTON,

## DECEMBER TERM, A. D. 1844.

### ALBEE v. WEBSTER.

A conveyance on the consideration in part that the grantee will provide support and maintenance for the grantor or members of his family, is fraudulent and void as to existing creditors, when the agreement for such support furnishes a substantial part of the consideration, and the remainder is inadequate.

*It seems* that the fact that other property was retained sufficient for the payment of the grantor's debts, would not (as suggested in *Smith* v. *Smith*, 11 N. H. 461) alter the case.

But if it can be shown that the grantee has paid or secured to the grantor the full value of the land, apart from the agreement to maintain, and this was done without any design or intention to defraud or delay creditors, and in such a manner that standing alone creditors could not except to it, the addition of the obligation to maintain will not avoid the conveyance.

When a full and adequate consideration is paid upon a sale of goods made without any actual intention of defrauding creditors, the sale is not to be deemed fraudulent because a farther distant consideration is added, which of itself and standing alone would be insufficient and constructively fraudulent as to creditors.

The principle that if there be two parts of a consideration, one of which is illegal, the whole is thereby rendered bad, does not apply in favor of creditors, as a test of the validity of the conveyance in question.

Although in general an absolute conveyance of land in fee with a simultaneous verbal agreement for a reconveyance on the repayment of the purchase money, will render the conveyance void as against creditors, it is still open to the grantee to show that he has paid the whole value of the land, and to rebut the inference of a secret trust, by any appropriate evidence, such for instance as the proof of a special and personal or family motive to regain the estate.

An officer who holds a writ against B, on which he had a right to attach articles of personal property in the possession of A, on the ground of a

Albee *v.* Webster.

fraudulent conveyance, finding other articles intermingled with them, called upon A to designate the portion which was not derived from B; but A refused to do so, and thereupon the officer took the whole into his keeping;—*Held*, that the officer was not a trespasser by reason of such taking, the case being one of confusion of goods caused by the act of A.

Yet if B subsequently designate the portion as to the original title in which there is no controversy, and demand the surrender of them, the officer is then bound to surrender, and a refusal constitutes a conversion of such portion.

But such refusal renders the officer liable only in trover, not as a trespasser *ab initio.*

TRESPASS, for taking and carrying away certain articles of personal property on the 7th day of April 1843, by John Farr, a deputy of the defendant, who is sheriff of the county of Grafton.

The defendant pleaded the general issue, with a brief statement that on the 7th day of April 1843, he had in his hands for service certain writs against one Alexander Albee, and by virtue thereof attached the property in question as his property.

The plaintiff gave in evidence a deed from Alexander Albee (who is the plaintiff's father) to the plaintiff, of the farm on which Alexander lived, dated January 3, 1843, acknowledged on the 10th and recorded on the 12th of the same month. He also gave in evidence a mortgage in fee with warranty of the same premises, from himself to his father, dated and acknowledged on the 10th of the same January, but not recorded, the condition of which provided that if Joseph should pay certain debts of said Alexander Albee, and save said Alexander's effects and property harmless therefrom, and should at all times provide and furnish as good and comfortable support and maintenance, &c., for said Alexander and his wife and daughter, and also pay Christina C. Ayer, daughter of said Alexander, thirty dollars within one year from date, then the deed to be void, &c., &c.

The plaintiff also gave in evidence a bill of sale, his

father to himself, of certain personal property, including the greater part of the articles sued for, and including also numerous articles of household furniture. The bill of sale purported to be " in consideration of certain agreements and securities made and executed this 10th day of January 1843, by Joseph A. Albee to me "; and after enumerating the articles above referred to, concludes thus: "together with any other articles not herein enumerated."

The debts against Alexander Albee to secure which the property was attached by the defendant, existed at the time of the bill of sale and mortgage.

The plaintiff offered to prove, by parol, that Alexander Albee at the time of the sale of the real and personal estate, owed him the sum of $857.32, which was discharged in part consideration for the above mentioned conveyance; that he had signed as surety for said Alexander all the notes for the debts mentioned in the condition of the mortgage, except the debt due the estate of Silas Hibbard, and that due to Curtis L. Albee; and that he then promised said Alexander to pay said debts, and had paid Curtis L. Albee since, and also the notes to Nelson Heath and Buck; that the real estate was not worth more than the sum of four hundred and fifty-one dollars over and above the incumbrance then existing upon it, and that the value of the personal property did not exceed $972.93; that upon the sale the plaintiff took possession of the real and personal estate; that the debts mentioned in the condition of the mortgage amounted to the sum of $637.13.

The plaintiff also proposed to show that the value of all the property conveyed to him, including the value of the farm over and above an incumbrance which was upon it at the time, and the value of the personal property, was not over the sum of $1324.29, and that the amount of the consideration paid and agreed to be paid, including the debt due him from Alexander Albee and the debts of Alexander which he agreed to pay, amounted to $1474.45;

so that there was as he alleged a valid and sufficient consideration for the conveyance, beside the covenant to maintain the persons mentioned in the condition of the deed, and the covenant to pay the sum mentioned to Christina Ayer.

He also offered to prove that at the time the mortgage was given he made a verbal agreement with Alexander Albee, to pay the debts of said Alexander, which was a part of the consideration of the conveyance of the personal property.

But the court excluded all the above evidence, on the ground that the conveyances from Alexander Albee were fraudulent as to creditors.

The plaintiff contended that he was at all events entitled to recover of the defendant for taking a certain portion of the articles, his title to which was not derived from Alexander Albee. Upon this point it was admitted that some of the property the plaintiff did not have from said Alexander—that it was upon the farm with the property which the plaintiff had of Alexander; that the officer when he attached the articles as the property of Alexander, requested the plaintiff to point out to him the articles which he held by some other title than from Alexander, but the plaintiff refused so to do ; that afterward and at the time of the sale of the property, the plaintiff demanded certain articles of the defendant specifically, distinguishing them from the articles which he had of Alexander, and stating from whom and how he derived his title to each article ; but the officer refused to deliver the articles.

The court ruled that the plaintiff could not recover in trespass for those articles, even although the plaintiff did not derive his title to them from Alexander, but that the action should have been trover.

A verdict was taken by consent for the defendant, subject to the opinion of this court upon the foregoing case.

*Quincy,* for the plaintiff. The question of fraud is a matter to be tried by the jury.

There was no secret trust. The deed, mortgage, and bill of sale, were all parts of the same transaction. The trust, if any, is in the condition of the mortgage.

Is the clause for the maintenance of father and mother such a fraud as to render the transaction void, notwithstanding there was an adequate consideration? There is nothing to show an intent to defraud creditors, except what results from the instrument itself. The idea of fraud in law is exploded in New-York. 8 Cowen 406; 4 Wend. 303.

The plaintiff offered to prove that he paid a full and adequate consideration aside from the stipulation for support. *Slater* v. *Dudley;* similar to this, 18 Pick. 373; *Gunn* v. *Butler,* do. 248. The debts not paid he had agreed to pay. *Shephard* v. *Little,* 14 Johns. 210; *Bowen* v. *Bell,* 20 do. 338.

Another question is whether the plaintiff could maintain an action for that portion of the property not derived from his father; or in other words, whether when the sheriff came to attach the property of the father he could take the other portion also. The sheriff was bound to inquire. The doctrine of commingling of property does not apply. That applies only when goods of the same character are mixed. But if it did, by going on to sell there was a new conversion.

*Bellows,* for the defendant. There is one other question; whether the contract respecting the farm was valid or not. There was a sale of all the other property. The contract was in consideration of certain agreements and securities.

The son was under no obligation to perform on his part. The condition of the mortgage is to support. But he is under no legal obligation to do so. All he had to do was

to support as long as he pleased, and then let the farm go back into the possession of the father.

We say that the whole transaction was fraudulent *per se.* The grantee was indebted at the time and much embarrassed, owing debts to a greater amount than the whole of his property. A party can not convey his property to secure his support. The conveyance being to secure a maintenance of the party, the law presumes it fraudulent. The object is to defeat creditors. The fact then that there were other considerations which, standing alone, would be good, is of no importance. *Winkley* v. *Hill,* 9 N. H. 31; *Tifft* v. *Walker,* 10 do. 150; *Harris* v. *Sumner,* 2 Pick. 129.

Here was a mingling of goods, of stock of the same kind. The officer called upon the plaintiff to designate. He did not take the property of the plaintiff by authority of the law; he took it because he was obliged so to do by the conduct of the other party, by license in effect. The doctrine respecting trespass *ab initio* does not apply.

PARKER, C. J. There are some circumstances attending the conveyances in this case, which might be urged upon the consideration of a jury as evidence that the transaction was intended by the parties to it as the means of securing the property of the vendor from his creditors, and appropriating it to the use of himself and his family; and if such were the fact, the amount which was paid, even if it was more than the full value of the property, would be wholly immaterial. The fraudulent design would vitiate the whole transaction, and the defence would be complete.

The case before us at this time however raises no question of that character. If the defendant raised the question of actual fraud at the trial, he did not rest his case upon that alone; and the evidence and instructions raise the question how far the case is fraudulent constructively, by operation of law from the circumstances of the sale to

the plaintiff. It appears that the plaintiff offered to prove that he was a creditor of his father, the vendor, and that this furnished a part of the consideration for the conveyance. A debtor may lawfully prefer one of his creditors to others. The plaintiff also offered to prove that he at the time assumed the payment of certain debts due to others; and this, if done *bonâ fide,* would furnish thus far a good consideration.

It appears also that a part of the consideration of the conveyance consisted of an agreement on the part of the plaintiff to maintain his father, mother, and sister; and to pay a certain sum to another sister to whom no debt appears to have been due. This if it had been the entire consideration, would clearly have been constructively fraudulent as to existing creditors. A debtor has no right thus to appropriate and secure his property for the use of himself and his family, to the prejudice of those to whom he is indebted at the time, even if he suppose he has property enough left to pay them and his intentions are fair. It is a withdrawal of funds to which they have a right to resort for payment, upon a consideration which the law does not here acknowledge as one which is valid against creditors. *Smith* v. *Smith,* 11 N. H. 460. A *quære* was suggested in that case whether, if the debtor retained property sufficient for the payment of his debts upon which his creditors might levy, the conveyance might not be valid. But however much he may have had left, it is evident that it might be lost or expended, and the creditors receive no benefit from it. It is sufficient in such case that the property to which the existing creditors resort, and which was once liable to pay the debts, has been sold upon a consideration which secures it in effect to the debtor's use, and that such was the direct operation of the transaction as must have been well known to the parties. The vendee can not complain that the law requires of him before he relies upon such a contract, to inquire and ascer-

tain that there are no creditors to be prejudiced by the transfer.

If such an agreement to maintain the vendor or his family does not form the entire consideration of the sale and transfer, but if the other considerations connected with it are inadequate or insufficient, it is apparent that the same principle must apply and the whole transfer be void as to creditors. The entire sale being founded on several considerations, one of which was bad and the others inadequate to sustain it, there could be no separation so that any part of the transfer could be held to be upon a sufficient consideration. Thus far we regard the principles as plain and the result satisfactory.

But the question presented to us by the first part of the case before us is not yet solved. On the supposition that the good part of the consideration is adequate and sufficient and to the full value of the property, so that if it stood alone the sale would be valid against creditors, is the sale vitiated and the whole avoided, because the parties without any intention to defraud, have connected with it another matter, which if it stood alone, or even if it formed a substantial part of the price without which the sale could not stand, would have been a fraud upon creditors ? This is a case which can very rarely occur, but it is the one presented by the offers of proof by the plaintiff.

We can not say that we have any doubt respecting the true principle which should govern cases of that description, if any exist. We have certainly had no disposition to disregard the just rights of creditors to a satisfaction from the property of the debtor. But it is not sufficient that the transfer of the property by the debtor has been, upon its face, of a doubtful character, and under such circumstances as to require the creditor to make an examination whether it is valid or not, to inquire what was the consideration for the sale and transfer, and how far that consideration was to the full value of the property con-

veyed. The principle that if there be two parts of a consideration and one of them be illegal the whole is bad, the consideration being entire, does not apply here. That is a rule by which the validity of the transaction as between the parties may be tested. But the whole transaction may be illegal as between the parties, and creditors have no right to interfere. *Clark* v. *Gibson*, 12 N. H. 386; *Smith* v. *Bean*, 15 N. H. 577.

A sale may be actually fraudulent as to creditors for want of sufficient consideration, and yet be made good if full consideration be subsequently paid before creditors interfere. *Oriental Bank* v. *Haskins*, 3 Met. 332; *Verplank* v. *Sterry*, 12 Johns. 536, 552. So a sale may be fraudulent as to creditors on account of a secret trust accompanying it, but if by a subsequent agreement before the creditors interfere this secret trust is discharged and the sale is otherwise made valid, the fact that the trust once existed will not operate longer to vitiate the sale, the fraud being purged. The principle may be found in *Thomas* v. *Goodwin*, 12 Mass. 140, and in *Hutchins* v. *Sprague*, 4 N. H. 469; the application of it in the latter case being somewhat doubtful, because there was no subsequent agreement. These are cases it is true where the transfer is rendered valid against creditors by subsequent transactions. The fraud is purged as it is termed. But they serve to show that the sale is not to be avoided because something has been coupled with it of an illegal character, if in fact it has no operation against creditors.

It was held in *Winkley* v. *Hill*, 9 N. H. 31, that a conveyance of land absolutely in fee, with a verbal agreement at the time that the grantor should have a reconveyance on the repayment of the purchase-money, was fraudulent, the grantor being indebted at the time. The agreement furnished evidence tending to show that there was a value beyond the amount of the sale, and a secret trust reserving that value for the benefit of the grantor. In the case

itself there was nothing to rebut the presumption. Cases of that class differ somewhat from those where the debtor conveys the land by an absolute deed, but the real transaction is that the grantee is to hold it as security for a debt. Where the conveyance is upon a purchase, as in *Winkley* v. *Hill*, it is more nearly what it purports to be. There is a purchase of the fee and a payment, and thus far the deed expresses upon its face what has actually been done. There is no debt existing in favor of the grantee holding the absolute conveyance, upon which he may institute a suit and seize the property of the grantor to the prejudice of other creditors, as there is in cases where an absolute deed is taken instead of a mortgage, apparently withdrawing one portion of the property entirely from the reach of the creditors, at the same time that the grantee retains his debt, and thereby the rightful means of attaching and levying upon other portions of the property of his debtor. But the agreement or condition annexed to purchases of the description of that in *Winkley* v. *Hill*, furnishes evidence tending to show that the property is of greater value than the sum paid, and that there is a secret trust to that extent for the benefit of the grantor, the subject matter being held in such a manner that the creditors of the grantor can not reach it at law but by avoiding the conveyance. But we think it expedient to qualify the general terms in which the report of that decision is expressed. If there is a substantial interest reserved in this mode, it is very clear that there is a secret trust, and there are obvious reasons why this should render the conveyance fraudulent as to existing creditors. *Towle* v. *Hoit*, 14 N. H. 61. It must not however be understood that evidence may not be received to show that the grantee paid the full value of the land, present and prospective, and thus to rebut the inference of a secret trust to the prejudice of creditors, because the reservation was of nothing which was of value to them. While we carefully

protect the rights of creditors, we must not forget those of purchasers; and to defeat a sale and purchase when full value is fairly paid, because of a nominal or fanciful reservation, would be holding the rule too rigidly and inflexibly. If it should appear that the reservation has in fact been made merely on account of a desire to repossess himself of the premises, on account of family associations, or a fancy for that particular locality, or any other reason not involving a reservation of something which might be of value to the creditors, the trust would not seem to be of a character to defeat the conveyance.

We are clearly of opinion that the evidence to show a full payment of the value, and thus rebut the inference that the grantor had in fact appropriated and secured his property to his own use, should have been received in the case. If the full value was fairly paid by the plaintiff by the discharge of his own debts and the payment of debts honestly due to others, the creditors have not been defrauded, because in addition to this, and possibly for the purpose of thus securing a large debt due to the plaintiff, he furthermore agreed to support his father, mother, and sister, during their lives. The improbability that such a case exists in fact, does not change the principle. The full value having been paid in considerations that the law adjudges lawful, the creditors can not complain that the vendee has assumed burdens which are not to their prejudice. *Slater* v. *Dudley*, 18 Pick. 375.

The other exception to the ruling of the court can not be maintained. Personal property of the plaintiff, not derived through this sale from his father, was so intermingled with that purchased of the father, that the sheriff could not designate and separate it. Having a process against the father and directions to attach the property sold by him, upon the ground that the sale was fraudulent (which on that supposition it was lawful for him to do), he requested the plaintiff to enable him to make the

separation, by pointing out the property included in that purchase. This the plaintiff refused to do, and thereby imposed upon the sheriff the necessity of abandoning the service of his precept, or seeking other sources of information, or taking the whole property for the purpose of securing what he had a right to attach. The sheriff could not lawfully abandon his process. It was his duty to attach. The plaintiff of course had the necessary information, and no reason has been suggested or suggests itself to us, why he should be permitted to require the sheriff to seek elsewhere the information he could so readily give, and to attach at the peril of being held a trespasser if he took more than he desired to take. It seems to be a confusion of goods caused by the act of the plaintiff, and within the principle which governs such cases. *Kingsbury* v. *Pond,* 3 N. H. 513; *Lewis* v. *Whittemore,* 5 do. 364; *Barron* v. *Cobleigh,* 11 do. 557. The officer was not a trespasser under such circumstances, if in making his service upon the property he had the right to take, he took without designing so to do other articles to which the plaintiff had a good title. It was the fault of the plaintiff. This fault however is not to be punished by an entire loss of the goods. It only excuses the officer for taking and holding them until he ascertains the fact. The plaintiff subsequently designated them, and it was the duty of the officer to deliver them. He seems to have entertained the mistaken opinion that the plaintiff by his refusal to designate in the first instance had lost his right to the goods, and that he therefore had a right to sell them. But this mistake will not make him a trespasser *ab initio,* any more than the plaintiff's previous mistake deprived him of his title to the goods. It is an unlawful conversion of goods of which he lawfully obtained possession, for which the plaintiff may have a remedy in trover but not in trespass. The authorities are explicit. *Lewis* v. *Whittemore,* 5 N. H. 366; *Shumway* v. *Rutter,* 8 Pick. 443; *Bond* v. *Ward,* 7 Mass. 123.			*Verdict set aside.*