## OVERBY ET AL. VS. McGEE.

It is a general rule that a sheriff, or other officer, who executes a writ of attachment or execution, is bound to take the debtor's goods alone; and that he is guilty of trespass for taking the goods of a stranger.

The owner of property levied upon and sold under a writ of attachment against another, may not only recover the property and damages for the detention, from the purchaser, but may also maintain an action of trespass against the officer and plaintiff in attachment, for the taking of the property ; although, at the time of the levy and taking, the property was in the possession, *under a loan*, of the defendant in the attachment.

*Appeal from Johnson Circuit Court.*

Hon. FELIX I. BATSON, Circuit Judge.

WALKER & GREEN, for the appellants.   A valid writ of attachment or execution, is a protection to an officer in seizing personal

property, which he finds in the possession of the defendant in such writ—possession of personal property being *prima facie* evidence of ownership. *Williams vs. Lownds,* 1 *Hall* 595; 8 *Cowen Rep.* 65; 7 *Wend.* 236.

Where a trespass has been committed by several persons jointly, the party may sue any or all of the trespassers; but he can recover but one satisfaction, and so the plaintiff having recovered the property and damages from the purchaser, as stated in the second plea, such recovery is a bar to the prosecution of this suit. 2 *Rawle Rep.* 395; 6 *J. R.* 168; *Cowen & Hill's Notes to Phill. on Ev.,* vol. 3, *pages* 823, 978; 8 *J. R.* 383.

The gist of this action, is the injury to the possession, and the general rule is, that, unless, at the time the injury was committed, the plaintiff was in actual possession, trespass cannot be supported. In this case, the bailee or person in possession, had the right to maintain trespass, and not the general owner. 1 *Ch. Pl.* 174; 12 *J. R.* 183; 11 *ib.* 385; 11 *Mass.* 415; 17 *ib.* 299.

Mr. Justice WALKER delivered the opinion of the Court.

This is an action of trespass, brought by McGee, against Overby (a constable) and others, for forcibly taking a mule.

The defendants jointly pleaded the general issue; and the defendant, Overby, filed special pleas of justification; the first, and most material of which was, that, as constable, he levied an attachment upon the mule, having found it in the possession of Riggs, the defendant in attachment, and kept the mule, under and by virture of this authority, until the return of the writ.

To this plea, a demurrer was sustained, and the defendant refusing to plead over, insists here that the plea is a sufficient justification. It is conceded that, if the matter of defence is sufficient, the plea is good in all other respects. The grounds of the defence are, that possession is *prima facie* evidence of title to a chattel, and that *prima facie* title is sufficient to justify the officer in making a levy. It is true that the officer must, in distinguishing the defendant's property from that of a stanger, rely upon the ordinary

evidence of title to such property, amongst which are actual pos--
session, use, declarations of ownership, and common reputation.
And these, with many others, give evidence, more or less conclu-
sive, of title. It is not to be expected that the officer has per-
sonal knowledge of the property owned by the numerous indi-
viduals against whom he may have process, or that he can, even
upon enquiry, in many instances, get any reliable information.
That goods are found in the storehouse of a merchant, or a horse
or implement of husbandry in the possession of a farmer, in the
absence of any evidence to the contrary, furnish such reasonable
presumption of ownership. And the question is, shall the officer
be held justifiable, in the absence of evidence to the contrary,
in taking the goods in execution.

The general rule, as laid down by the authorities, is, that the
sheriff, or officer, who executes a writ, is bound, at his peril, to
take the debtor's goods alone; and that he is guilty of trespass
for taking the goods of a stranger, even though assured, by the
plaintiff in execution, that they are the property of the defen-
dant. 4 *Term Rep.* 633 ; 3 *Maule & Selw.* 175 ; 8 *Cowen Rep.*
65; 1 *Pick.* 545.

To this general rule, there is an exception, to the effect, that
where the goods of the defendant and a third person are so mixed
that they may not be readily distinguished, the officer may levy
upon them, and only becomes liable to a stranger for levying,
should he refuse to deliver them to the rightful owner upon re--
quest. 7 *Mass.* 123.

The reason, upon which this distinction rests, is commendable
for its tendency to encourage the officer in the discharge of his
duty, when acting in good faith, by furnishing him protection,
at least until he is advised that there exists an adverse claim to
the property ; and, when viewed practically, the injury likely
to result to the owner, if any indeed, is nominal, because, when
the property is not in his possession, when the levy is made, as
he is not deprived of the immediate possession, no damage is
likely to result, on account of the taking in the first instance,

to him, much less than to the defendant in execution; for, being possessed of it, the temporary use may be valuable to him. So that it is not until after notice of his claim, that the officer should strictly be held to act at his peril.

And when considered in reference to our statute, which provides for a trial of the right of property, after a levy has been made, and before sale, and of the effect which the verdict of the jury has upon the officer's liability, we should strongly incline to hold the officer justifiable, in the first instance, for taking the property in execution.

The statute declares that, if any person, other than the defendant in execution, shall claim the property levied upon, and shall give notice thereof to the officer, such officer may summon a jury to try the right of property, which, if found subject to the execution, the verdict shall be an indemnity to the officer in proceeding to sell the property; otherwise, unless indemnified, the officer is not required to sell it.

Now, it is evident that if the effect of the verdict of the jury, finding the property subject to the execution, is to justify the officer in selling it, it must be because he is considered as in the lawful discharge of his duty, up to the trial and verdict, as well as after it. Because, if the officer is to be held as a trespasser for making the levy, and up to the time of the trial of the right of property all the mischief intended to be remedied by the act, might arise before the officer could avail himself of the benefit of it. For, until after the levy is made, no trial of the right of property can be had. The justification must therefore be complete, extending to the levy, as well as the sale. And such is the decision of the Supreme Court of Kentucky, under a similar statute. *Terrel vs. Cockrill*, 3 *Bibb's Rep.* 258.

And although the officer may be justified in making a levy upon property found in the defendant's possession, and in the absence of evidence to the contrary, *prima facie* his, it by no means follows that if, upon demand or notice, the officer refuses to restore the property to the true owner, he should not be held

as a trespasser *ab initio*, as held in 7 *Mass. Rep.* 123. Nor do we intend to question but that the owner of property, wrongfully taken and converted by an officer, may not pursue and reclaim his property, or its value, regardless of any finding of the jury, upon the trial of the right of property, or whether the officer is notified of his title or not. The greatest extent to which either could go, would be to relieve the officer from liability as a trespasser in suit in trespass for damages.

But the officer, who levies a writ of attachment, may, with good reason, be held to greater strictness in making his levy, because, when once made, there is no means, by statute, for trying the title to the property levied upon, but he must, at his peril, return it with his writ. And, in addition to this, as attachment is a proceeding *in rem*, it is the defendant's property which gives authority to the court to proceed to render judgment and direct a sale. The trial by interpleader, after the return of the writ, it is true, may afford to the claimant some relief, but generally, after much delay and expense. In addition to these considerations, it may be remarked, that the whole current of adjudicated cases is in favor of holding the officer responsible at his peril for levying upon the property of a third person.

The question raised upon demurrer to the second special plea, which sets up in defence a recoverry of the mule in an action of replevin from a third person, in bar of a recovery in this suit, was settled by this court, when this case was before us upon a former occasion. See *Overby vs. McGee*, 7 *Eng.* 164. The demurrer was properly sustained.

Upon the trial, under the general issue, the proof was, in substance, that the mule was the property of the plaintiff, a resident of Texas, who loaned it to Riggs, the defendant in attachment, to ride home, with instructions, after he got home, either to send it back to the plaintiff, if an opportunity should be offered, or keep it until plaintiff came to Arkansas. That the mule was levied upon, and taken from the possession of Riggs, whilst on his way, but before he reached home.

The appellants contend, that the plaintiff was not entitled to recover in trespass, because, in such action, the plaintiff must not only show a general property in the chattel, but also possession. And that, although it may be true that the general property carries with it, *prima facie*, a right to immediate possession in most cases, and consequently is equivalent to actual possession, that in this case, this *prima facie* possession is repelled by evidence that the plaintiff had in fact parted with his right to immediate possession.

It is very true that, in some cases, the general owner of personal property may neither be in the possession of it, nor entitled to the possession of it, at the time the trespass is committed: and, it is equally true, that, when such is the case, the general owner cannot maintain trespass for such injury, (1 *Ch. Pl.* 169 ; *Hume vs. Tuffs*, 4 *Blackf.* 136): as, for instance, where the property is in the hands of a bailee for hire, for a time which had not expired, when the trespass was committed. Because, as the general owner in such case, has, by contract, vested in the bailee a special property, coupled with actual possession, the bailee's right is good, even against the general owner for the time being. The inference, arising from the general ownership, of possession, is rebutted, and only exists in reversion; and, consequently, as there is neither actual possession, nor a right to possession in the general owner, he cannot maintain trespass. But, where the general owner merely permits another gratuitously to use his chattel, such owner may maintain trespass against a stranger for an injury done to it, whilst thus held. 1 *Ch. Pl.* 174.

In the case of *Long vs. Bledso*, 3 *J. J. Marsh.* 307, the facts were, that the plaintiff loaned his mare to a neighbor, against whom an execution issued, which was by the sheriff levied upon the mare, whilst in the possession of the defendant in execution. Under this state of case, the question arose whether the plaintiff (the general owner) was so possessed of the property, at the time of the levy, as to entitle him to maintain trespass. And it was

held, "that the possession of the loanee was, in legal contemplation, the possession of the lender."

This decision is directly in point, and is sustained upon this sensible ground that, when the actual possession of goods is in the bailee, and is held by him as a mere gratuity, and not upon contract, under which he has acquired rights beneficial to himself, and which he may assert, for the time being, even against the general owner, as such gratuitous possession is merely at the sufferance of the general owner, it may, at any time, be terminated by him, and is considered in legal effect his. So that, upon this ground alone, there was no sufficient ground for granting a new trial.

Finding no error in the judgment and decision of the Circuit Court, let it be affirmed.