### CHESHIRE NATIONAL BANK *vs.* DWIGHT JEWETT.

Franklin. Sept. 22, 1875. — Jan. 4, 1876. AMES & DEVENS, JJ., absent.

Tobacco stored in barns, hanging on poles in process of curing and in such condition that it cannot be moved without great damage to it, is subject to attachment.

Under the Gen. Sts. *c.* 123, § 57, providing that in the attachment of articles of personal estate, which " by reason of their bulk or other cause cannot be immediately removed," a certified copy of the writ and the return may be filed within three days in the office of the city or town clerk, it is sufficient if the property cannot be removed without great damage to it.

Tobacco in the process of curing, and in such condition that it could not be removed without great damage to it, was attached under the Gen. Sts. *c.* 123, § 57, and

afterwards, at the time when it required to be stripped and packed, was stripped and packed by the defendant in boxes so that it could be transported without injury. No arrangement was made between the defendant and the attaching officer in regard to the stripping and packing, and the officer did not see the tobacco until after it was packed, when he locked up the boxes containing it in a building upon the defendant's premises. The defendant afterwards mortgaged it to a person who had no knowledge of the attachment. The key to the building was kept by the officer for several months, and then given to the defendant's assignee in bankruptcy to enable him to examine the property, and by him lent to the defendant for a special purpose, without the knowledge of the officer. The mortgagee afterwards took possession and placed a keeper in charge of the property, from whom and against whose protest it was taken by the officer. *Held*, that there was no such misconduct or neglect shown on the part of the plaintiff or the officer as would dissolve the attachment.

CONTRACT. Writ dated September 20, 1873. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on an agreed statement of facts in substance as follows :

It appeared by the officer's return that on September 20, 1873, he attached all the tobacco then hanging in the barns on the premises occupied by the defendant, namely, the crop of 1873, and on September 22, 1873, deposited an attested copy of the writ, without the declaration, and of his return thereon, in the office of the clerk of the town of Deerfield.

On June 6, 1874, the defendant filed a petition in bankruptcy, and afterwards made a composition with his creditors, which was approved by the court, and recorded, and became binding to bar the plaintiff in this action, except so far as his rights may be modified by the attachment.

The tobacco, when attached, was hanging upon poles, in the process of curing. Tobacco in that condition cannot be taken down or removed without great damage. This was the only reason why the property could not have been immediately removed at the time of the attachment, and it was on this account that the officer adopted the mode of attachment set out in his return. Tobacco, after hanging a sufficient length of time upon poles in order to properly preserve it, needs to be taken down from the poles, stripped and packed in boxes, after which it goes through a process which is called a sweat, before it is fit to be unpacked or used. The work of taking down, stripping or packing should be done during the first winter after the tobacco is cut, by persons

having some skill and experience in such business and in weather adapted by its temperature to the work. The attaching officer having taken no measures for the stripping and packing of the tobacco, and the time having arrived when it needed to be done, the defendant, with the assistance of other persons employed by him, on or about December 20, 1873, took it down, stripped and packed it in boxes, after which it could be easily transported from place to place without injury.

On April 15, 1874, the defendant made a mortgage thereof to Roswell P. Crafts, which was duly recorded, Crafts having no knowledge of said attachment. No arrangement or contract was made between the defendant and the attaching officer in regard to the stripping and packing, nor did the attaching officer see the tobacco or give any directions about it until about April 1, 1874, when he took the cases containing it and locked them up in a building upon the defendant's premises. The tobacco remained there for some months, when the key, which had been in the custody of the officer up to that time, was given into the possession of the defendant's assignee in bankruptcy to enable him to examine the property, and by him lent to the defendant for a special purpose, without the knowledge of the officer, and the defendant retained it, without objection and without the personal knowledge of the officer, in his possession for several weeks, during which he had access to the place where the tobacco was, and during this time Crafts came to the place and claimed to take possession of the property under his mortgage, no one hindering him, and put a different lock upon the door, and left a keeper in charge of it, the former lock having been taken off. Subsequently the officer came and took away the tobacco, against the protest of Crafts's keeper.

Upon the foregoing facts, such judgment was to be rendered as the court should direct.

*A. De Wolf*, for the plaintiff.

*G. M. Stearns & M. P. Knowlton*, for the defendant.

COLT, J. The defendant contends, upon the facts agreed, that there is no valid subsisting attachment of personal property, against which, since the bankruptcy of the original defendant, a special judgment can now be rendered; first, because, the property taken on the writ was, from its nature and situation, exempt

from attachment, next, because the mode adopted by the officer in this case did not constitute a valid attachment; and, lastly, because the lien, if any, thereby created, has been since lost by the neglect or misconduct of the attaching officer.

The property attached was tobacco stored in barns, hanging on poles, in process of curing, and in such condition that it could not be moved without great damage.

In this Commonwealth all personal property liable to be taken on execution is subject to attachment, except such as, from its nature or situation, has been considered as exempt according to the principles of the common law here adopted and practised on. Gen. Sts. c. 123, § 32. In *Bond* v. *Ward*, 7 Mass. 123, it was accordingly held that hides in a vat for tanning could not be attached, because they could not be returned in the same plight. And the same rule was said to apply at common law to sheaves of corn or hay in a cock or barn, "because they would be injured, as the grain of the sheaves would be shattered." This rule was affirmed in *Campbell* v. *Johnson*, 11 Mass. 184; but was held not to apply to hay in a barn, because on account of the changed condition of husbandry, the reason of the rule "has ceased with us." It has long been held in this state that corn or other growing products of the soil, when ripe and in a fit state to be gathered, could lawfully be attached or taken on execution, and that the officer might enter, cut down, seize and sell the same as personal estate. *Penhallow* v. *Dwight*, 7 Mass. 34. *Heard* v. *Fairbanks*, 5 Met. 111. *Mulligan* v. *Newton*, 16 Gray, 211.

An exception to the old rule which forbids the attachment of property which cannot be returned in the same plight, is thus established by our decisions, which embraces all annual products of the soil when ripe and fit for harvest, and includes tobacco when in the condition here described. In the application of this exception, it would be impracticable to distinguish tobacco from other annual crops simply on the ground that the successful harvesting and curing of it require more time and care. And the objection that the duties required to secure the crop are such as do not properly belong to the attaching officer, applies equally to all crops which require harvesting.

As to the validity of the attachment on other grounds, the case comes within the provisions of the statute which authorize a

return to the town clerk's office when an attachment is made of personal property which, by reason of its bulk or other cause, cannot be immediately removed. Gen. Sts. *c.* 123, § 57. It is true the only reason here given for not removing the tobacco at the time of the attachment is, that it could not be then removed without great damage. But that is one way of stating that the property was not in a condition for immediate removal within the fair meaning of the statute. In determining that question, the liability of the property to injury, as well as the expense and difficulty attending its removal, are to be considered. *Polley* v. *Lenox Iron Works,* 4 Allen, 329.

The officer acquired a special property in the tobacco attached by virtue of his attachment in this form, which was good, at least so long as the difficulty of its removal remained, as against all persons interfering, and which remained good until some title was acquired which could be set up as valid against the attachment. Before any such title was acquired, the sheriff took actual possession of the property and placed it under lock and key. There is nothing to show a voluntary surrender or abandonment of the attachment on the part of the officer or the plaintiff in this suit at any stage of the case. And we do not find any such neglect on the part of the officer, after actual custody was taken by him, as should defeat the creditor's lien upon this property. *Butterfield* v. *Clemence,* 10 Cush. 269. *Shephard* v. *Butterfield,* 4 Cush. 425.

*Special judgment for the plaintiff.*