## BALL et a. *versus* BADGER.

Where an execution is delivered to an officer, with special directions as to the mode of collection, and he receives it without objection, he is bound to execute the precept in the manner directed, if it can be done by the exercise of reasonable diligence.  And he is not bound, in such case, to execute it in any other manner than according to those directions.

And where an execution is offered to an officer for service, with either general or special directions, and he declines receiving it, except under certain limitations as to the time or manner of collection ; if the creditor, instead of taking other measures, delivers it to him under such circumstances, the duty of the officer does not extend beyond the limitations he has prescribed. The creditor, in that case, must be considered as assenting to the mode and manner of collection which the officer has suggested.

CASE against the defendant as former sheriff of this county, for the default of Charles Bean, a deputy.

The declaration set forth a recovery of a judgment by the plaintiffs against one John Adams, at the court of common pleas, April term, 1830, on which execution issued May 1, 1830 ; that the execution was delivered to Bean on the 10th of May, and that Adams had sufficient property on which the same could have been levied ; but that Bean neglected to levy the same, &c. and made a false return, &c. whereby the plaintiffs lost their debt.

The action was tried in the common pleas, January term, 1833, on the general issue.

It appeared in evidence, that the original writ, on which the plaintiff's judgment was recovered, was served by

one Albert Little, another deputy of the defendant, who attached a yoke of oxen, for which he took a receipt of one Aaron Adams.

Upon the recovery of judgment by the plaintiffs, their attornies sent the execution, enclosed in a letter, to Daniel R. Carter, another deputy, with directions to call on Little for the receipt, and close the business immediately. Carter, on the 10th of May, handed the execution to Bean, and read to him the directions in the letter. Bean declined taking the execution, on the condition that he must collect it immediately, upon which Carter told him that he had seen John Adams, and he had agreed to pay the money by the return day, and if he would take it, and have the money ready by that time, he, Carter, would advance him the money, in case the creditors should call upon him before the return day, and upon this Bean took the execution.

It further appeared that said John Adams lived within three miles of Bean, and on the 10th of May, 1830, and from that time to the 28th of July, following, was in the open and visible possession of property, to an amount much larger than the judgment ; and that said John failed on said 28th of July, and has since been insolvent, and unable to pay.

Upon the receipt, taken by Little, was an acknowledgment, in writing, signed by said Aaron Adams, dated May 13th, 1830, that Bean had demanded the oxen, and he had not delivered them ; but said Aaron testified, that Bean never demanded the oxen, that he said he did not want them, as John was going to pay up the execution, and that if the oxen had been demanded of him he should have paid the amount.

It also appeared, that on the 25th of said May, Bean, having in his possession a writ in favor of another creditor against said John Adams, attached a horse as the property of said John, and that on the first of July, two other attachments of personal property were made by

other deputies, on writs against him. Whether Bean, and the others were indemnified on making those attachments did not appear.

The defendant introduced evidence to show, that attachments of the property of Adams had been made in February, 1830, and that Bean had reason to believe his title to the property in his possession, at the time Bean received the execution, was questionable ; and he contended, that from the circumstances under which Bean received the execution, his duty extended no farther than demanding the property receipted for, and disposing of it if delivered ; and farther that if the instructions required him to levy on other property, in case that receipted for should not be obtained, or prove insufficient, he was not bound to do so, because Adams' title to the property in his possession was doubted.

The court directed the jury, that in case the instructions to Carter, which were communicated to Bean, were limited to obtaining the receipt, and demanding the property, and they believed he had done so, the action was not supported ; but if the instructions were, farther, that in case the property receipted for was not delivered, or proved insufficient, to satisfy the execution from other property in the possession of John Adams, then it was his duty so to have done, unless he required an indemnity from the creditors, and they refused to give it. And that the agreement of Carter to wait until the return day, for the amount of the execution, would not affect the rights of the creditors, as he had no authority from them to make such a contract.

The jury returned a verdict for the plaintiffs, and the defendant moved for a new trial.

*I. Bartlett*, for the defendant, contended, that whether the instructions were general or special was a question of law. 5 Pick. 54, *Porter* v. *Blood ;* 1 Stark. Ev. 409. And, that upon the facts as proved, there was no default of

Bean, for which the defendant was answerable. 2 N. H. Rep. 89, *Cilley* v. *Jenness*; 8 Johns. 185, *Bayley* v. *Bates*; 15 Johns. 147, *Van Cleef* v. *Fleet*; 7 Cowen, 739, *Gorham* v. *Gale*; 6 Cowen, 467.

*Christie*, for the plaintiffs, cited, 7 Mass. 123, *Bond* v. *Ward*; 4 Mass. 60, *Marshall* v. *Hosmer*; 9 Mass. 112, *Perley* v. *Foster*; 15 Mass. 133, *Goddard* v. *Austin*; 3 Greenleaf, 373, *Green* v. *Lowell*—15 Mass. 317, *Dearborn* v. *Dearborn*; 9 Mass. 269, *Barnard* v. *Ward*; 18 Johns. 363, *Beals* v. *Allen*.

PARKER, J. It is not necessary, or proper, to enquire, in this case, whether Carter, to whom the execution was sent for collection, has failed in the duty he owed to the plaintiffs in relation to that execution. He is no party to these proceedings, nor can the sheriff be made liable, in this suit, for any default of his, if any has been committed.

This action being founded upon the alleged default of Charles Bean, another deputy, it is only necessary to consider the circumstances under which the execution came to his hands, and the duties which thereby devolved upon him.

The plaintiffs, in their declaration, allege, that on the 10th day of May, 1830, they delivered the execution to Bean, and that John Adams had sufficient property, on which the same could have been levied, but that Bean neglected to levy the same.

It is very doubtful, whether, upon this declaration, the plaintiffs could, under any state of the facts, give evidence that Bean neglected to demand property which had been attached upon the original writ, in support of this suit, as that is not the gist of the present action.

But we do not rest the decision upon that ground. The case finds, that Carter received the execution, in a letter, from the plaintiffs' attornies, directing him to call on Little for the receipt, and close the business immedi-

ately ; and that Carter handed the execution to Bean, and read to him the directions contained in the letter.

It is not doubted, that where an execution is delivered to an officer with special directions as to the mode of collection, and he receives it without objection, he is bound to serve it in the manner directed if it can be done by the exercise of reasonable diligence. 4 Mass. 63, *Marshall* v. *Hosmer*.

If then Carter had delivered the execution to Bean, and read the directions to him ; and Bean had received it without objection, and asking no indemnity, the defendant would have been liable if Bean had neglected to comply with those directions, and the plaintiffs saw fit to seek their remedy, upon such default of his.

But Bean did not so receive it. He declined taking the execution, upon the condition that he must collect it immediately, and upon this Carter told him that he had seen Adams, that Adams had agreed to pay the money by the return day, and if he would take it, and have the amount ready by that time, he, Carter, would advance him the money, in case the creditors called upon him before the day of the return, and upon this Bean took the execution.

Where an execution is delivered to an officer with special directions, the officer is not bound to execute it in any other manner than according to those directions. 13 Mass. 133, *Goddard* v. *Austin*.

And we hold, that where an execution is offered to an officer for service, with either general or special directions, and he declines receiving it except under certain limitations as to the time or manner of collection ; if the creditor, instead of taking other measures, delivers it to him under such circumstances, the duty of the officer does not extend beyond the limitations he has prescribed. The creditor, in that case, must be considered as assenting to the mode and manner of collection which the officer has suggested.

These principles settle this case. Bean declined taking the execution upon the condition that he should collect it immediately, and Carter then delivered it to him with directions that if he had the money at the return day it should be sufficient.

If the plaintiffs adopt the act of Carter in delivering the execution to Bean, they must adopt it with the limitation made by Bean, that he could not undertake to collect immediately, and with the direction by Carter, in substance, that if he proceeded to execute it at any time before it was returnable, it should be sufficient.

We consider this the effect of the direction given by Carter, and cannot adopt the argument, that Bean, receiving the execution with the direction as stated, must be considered as having guaranteed that the money should be forthcoming at that time ; for if this was to be the construction of his engagement, his only safe course would be to execute the precept without delay, which he had expressly declined to do.

And we find nothing in the case to show, that either Bean, or Carter, considered Bean as making any such guarantee. On the contrary, he was encouraged to delay the collection, by being told that Adams had promised to have the money ready.

If Bean made a guarantee, he should have been sued on his guarantee, and not for a neglect of official duty.

Carter agreed to pay the money if Bean was called on by the creditors at an earlier day, but there is nothing leading to a supposition, that if Carter had thus paid the money before Bean collected it, and the debtor had afterwards failed before the return day, Bean was to be liable to him for the amount.

Bean, then, having the execution with special instructions that he might serve it at any time before the return day ; the case finds that long prior to that time the judgment debtor became insolvent, and unable to pay, so that

before it became the duty of Bean to act, it was impossible for him to collect it.

The verdict must be set aside, and the case transferred for a                                   *New trial.*