Ranlett *v.* Blodgett.

### Ranlett *v.* Blodgett.

A manufacturer made a mortgage of certain manufactured articles, and all his stock then on hand, for the purpose of such manufacture, to secure the payment of a debt; with an agreement that the mortgagor should continue to manufacture as usual from the stock on hand, sell the manufactured articles, and appropriate the money to his own use, not accounting to the mortgagee; but agreeing to keep a supply, equal in value to the property mortgaged, always on hand for the mortgagee, and to remain himself liable for the mortgage debt;—*Held,* that the mortgage was invalid as to creditors.

Property purchased with the avails of the mortgaged property sold, under such circumstances, would not be within the mortgage, by substitution.

A sheriff who takes a writ, with directions to serve it in a particular manner, without requiring a written indemnity, is liable for not following those directions, unless he can show that he could not lawfully have obeyed them.

An implied promise of indemnity to a sheriff arises from a creditor's directions to him to serve process in a particular manner.

Where directions have been given to attach property, and the plaintiff, knowing that it is mortgaged, does not communicate the fact to the sheriff, he will not be exonerated from attaching, unless the fact was concealed with a view of prejudicing him.

CASE against the defendant, as sheriff of the county, for an alleged default of Joseph L. Gibb, a deputy, in neglecting, in the service of a writ in favor of the plaintiff against one Ira Savage, to attach certain personal property specified in the declaration.

It appeared that on or about the 14th day of December, 1838, the plaintiff, who then resided at Littleton, commenced an action against Savage for the recovery of a debt due him, and delivered his writ to Gibb, who also resided at Littleton, with directions to go to Lisbon, a distance of about ten miles, and attach certain personal property of Savage, specifying the articles, which consisted of gigs, wagons, sleighs, sleigh bottoms, wagon bodies, coal and iron; that Gibb went to Lisbon for the purpose of attaching the property, and on his arrival made known his business to Savage, who informed him that all the property then in his posession was mortgaged to James H. Johnson, and referred him to Johnson for further information in regard to the existence of the mortgage; that Gibb called upon Johnson, who informed him that he had a mortgage, and that it was on record in the town clerk's office in Lisbon, and told Gibb that, without payment of the debt it was mortgaged to secure, he must not take the property.

Savage was a wheelwright, carriage and sleigh maker, and in April, 1838, executed to Johnson a mortgage of all the carriages and sleighs he then had on hand, whether completely finished or only in the process of manufacture, and all the stock he then had on hand for the purpose of such manufacture; and at the time it was agreed that Savage should continue the manufacture of articles in the line of his business, from the materials on hand, finish such as were in the course of manufacture, sell the manufactured articles, and pay his workmen; and it was further agreed that Savage should keep the property good, or keep on hand for Johnson property equal in value at all times to the property mortgaged.

It appeared also that between the date of the mortgage, in April, 1838, and the time that Gibb went to attach the property, in December, 1838, Savage purchased wood, iron, and other materials necessary in his business, and

that he manufactured a large number of carriages and sleighs, had partially manufactured others, and that of the carriages finished he sold several to various individuals to the amount of $1500, or more.

It appeared, also, that he had on hand, at the time Gibb called upon him with the writ, some carriages finished, others partially completed, and considerable unmanufactured stock.

There was evidence tending to prove that the plaintiff knew, at the time when Gibb received the writ for service, of the existence of Johnson's claim by virtue of the mortgage, but did not inform Gibb of the fact. He was a person of ample pecuniary ability to respond such damages as might have been incurred by Gibb in the attachment of the property which he was directed to attach.

There was no evidence that Gibb, on the receipt of the writ, required any contract of indemnity from the plaintiff.

Upon this evidence the court instructed the jury that the mortgage of April, 1838, was not void, as against the creditors of Savage, but that, as to all the property mortgaged that was at the time unsold by Savage, the mortgage title of Johnson remained good; that the same was not liable to be attached by the creditors of Savage; that Johnson's title remained equally valid although, after the mortgage, what were at its date mere materials, as iron and wood, had been converted into carriages, or parts of unfinished carriages or sleighs; but that the mortgage did not cover what property was purchased by Savage after the execution of the mortgage, and that all that portion of the property was liable to attachment.

The court further instructed the jury that Gibb, at the time of receiving the writ for service, had a right to require of the plaintiff a special contract of indemnity by persons of reasonable pecuniary ability, to respond for

Ranlett *v.* Blodgett.

damages that might be sustained by him, by reason of attaching the property he was ordered to attach, and, without it, was not bound to serve the writ; but that, inasmuch as he did not require such indemnity, it was his duty, if he ascertained no fact to lead him reasonably to doubt that the title was in Savage, to have attached all that portion of the property at least which was not covered by the mortgage of April, 1838; that if he knew of the existence of the claim of Johnson to the entire property, at the time when he received the writ, and went to serve it, the failure to attach the portion not covered by Johnson's mortgage would be negligence in Gibb; and that in either case the defendant was liable for the negligence of Gibb.

But the court further instructed the jury that if Gibb did not know the state of the title by reason of the claim of Johnson, and if the plaintiff did know it, and did not inform Gibb, and if the information received from Savage and Johnson led Gibb reasonably to doubt, and he did doubt, whether the property was liable to attachment, Gibb had a right to omit attaching the property until he could seek and obtain such indemnity.

A verdict was returned for the defendant, and the plaintiff moved for a new trial.

*Bellows*, for the plaintiff. There are two principal questions. The first relates to the instructions of the court in regard to the validity of the mortgage.

The second is whether the sheriff might defer attaching, and go back to Littleton.

The instruction was that the mortgage was valid as to creditors, notwithstanding the agreement. The case finds the agreement. The agreement was that Savage might proceed and work up the stock, as before. There is no difference between this and an absolute sale, in this respect. Any trust, inconsistent with the objects of the

sale, renders it void as to creditors. 2 N. H. Rep. 13, *Haven* v. *Low;* 3 N. H. Rep. 415, *Coburn* v. *Pickering;* 2 Pick. 607; 3 Met. 117.

There was property on hand, not included in the mortgage, to a large amount. The sheriff was directed to attach it. He received the writ, undertook to do the business, and asked no indemnity. He might have required an indemnity, but he did not. He was bound to take the property if it could be found by reasonable exertion. There was a statement by Savage and Johnson that the property was all mortgaged. Such was not the fact. The officer should have exhausted all the sources of information. If he had done this he would have found that the property was liable. Or if, after having done all that he could do, he had reasonable doubts, he should have attached, because he had a virtual indemnity in the plaintiff — a responsible man, who had directed him to attach.

We have found no case authorizing the sheriff to require bonds with surety, if a plaintiff is sufficient. A turning out by the creditor is sufficient to make him responsible. 4 Mass. 60; 7 Mass. 123; 2 Pick. 284.

If he had a right to call for an indemnity, he had no right to leave the property in a situation to be made the subject of a conveyance. He should have held the property until he could have sent to the creditor for indemnity.

We think there was error also in instructing the jury that the conduct of the plaintiff had any thing to do with the question of the officer's neglecting to attach. The case finds that there was a mortgage, and that the plaintiff had notice of it. But it does not find that he knew that any unfounded claims would be set up. How, then, can that have any effect upon the duty of the officer with respect to the property not mortgaged?

Ranlett v. Blodgett.

*Wilcox*, for the defendant. It is not contended that there was fraud in fact. If the mortgage is void, it is so because it was agreed that Savage should continue the manufacture. Now the manufacturing of the raw material did not alter the property ; and as to the right to sell, the statute recognizes it, if the authority is in writing. The farther agreement is not inconsistent. 2 Met. 258, as explained by 3 Met. 515; 6 Law Reporter 347.

These questions of law were so difficult that the sheriff was not bound to attach. A sheriff is not always bound to attach at all events. He is bound to use due diligence. 4 Mass. 63 ; 6 N. H. Rep. 409, *Ball* v. *Badger*. An officer, with instructions to attach specific property, would not be bound to attach, if he found that the property belonged to another, without an indemnity.

If the debt is lost, the question is, whether the plaintiff, or the sheriff, or his deputy, should lose it. It should appear that the plaintiff was guilty of no negligence on his part, if he seeks to charge others. He was in the first fault in concealing his knowledge of Johnson's claim.

*Perley*, on the same side. The charge of the court was not that the mortgage would cover the subsequent acquired property, but only the property that remained. The authorities are strong to show, in such a case, that, between the parties, the intention might be carried into effect. 5 Taunt. 74; 3 Doug. 415; 2 C. & P. 62; 4 Maine 515 ; 7 Greenl. 241; 20 Maine 408. If the mortgage is not good, it can only be void against creditors. The agreement here was not that the party should sell and deprive the mortgagee of his security. The agreement was to substitute. That was not a fraud on creditors. The mortgagee would have no greater security than he ought to have for the debt. According to the charge of the court, the actual operation of the agreement does not interfere with the rights of creditors.

A change of the form does not change the property. 3 Pick. 177, *Stevens* v. *Briggs*; 5 Johns. 348; 7 Johns. 473.

As to the duty to attach, we deny that the officer had instructions to attach this property. If the plaintiff had no knowledge of the mortgage, and the officer had attached, the plaintiff would not have been liable. The duty of the officer arises from an implied contract. The plaintiff sent the sheriff into a risk that the officer did not know of. There was a fraudulent concealment of a material fact which the plaintiff was bound to communicate. It is not important whether the officer's duty arose by contract, or was an official duty. The concealment operates the same.

*Bellows*, in reply. If the ground be true that a fraudulent concealment modified the duty, it was a matter for the jury whether there was a fraudulent concealment. There was no evidence on the point, either that the plaintiff did not inform the sheriff, or that he did. If this is sufficient to exonerate the sheriff, he will be exonerated in all cases where a claim is made upon the property which he is about to attach.

PARKER, C. J. If the cases cited from Metcalf's Reports were to be regarded as authority here, the instructions respecting the mortgage must be sustained. But different views have been taken in this State respecting transfers of property, so far as creditors are concerned, and those cases cannot be regarded as authority, to the full extent of the principles there adopted.

We are of opinion that the mortgage of Johnson was invalid as to creditors. If such mortgages were held to be valid, they would serve effectually to cover the property of debtors, for the mortgagor is authorized to act as the absolute owner of the property, notwithstanding the mortgage. He is not the agent of the mortgagee, to sell and account to the mortgagee for the proceeds, nor even to

purchase other property with the proceeds, which, when so purchased, would become the property of the mortgagee. But he is authorized to sell when, to whom, and for what price he pleases, and to appropriate the money to his own use, without accounting for the avails, being liable on the debt and responsible on the contract to keep the property good, or to keep on hand, at all times, for the mortgagee, property equal in value to the property mortgaged.

We cannot hold that the property purchased with the avails of the mortgaged property sold would be within the mortgage, by substitution. If that were so, how are creditors to ascertain what is within the mortgage and what is not? And if it could be held that the after purchased property was substituted, so that the mortgage would cover it, the same power of sale and of substantial ownership would still exist, and be applicable to that also. If this doctrine were admitted, a mortgage of personal property would be like a kaleidescope, in that the forms represented would change at every turn; but, unlike that instrument, in that the materials would not remain the same. Savage was the owner, then, by the agreement, for all purposes except the rights of creditors, but those rights cannot be excluded by such an agreement, and they might attach.

When a sheriff takes a writ, with directions to serve it in a particular manner, without requiring a written indemnity, he is bound to serve it, if he may, according to the instructions; and it is not a sufficient excuse for him that he subsequently obtained some information which led him to suppose that a service in the manner directed would be ineffectual for the interests of the plaintiff, and even expose himself to an action, if his supposition was erroneous, and a service in the manner directed would, in fact, have been legal and effectual. He is liable unless he can show that he could not lawfully have obeyed the

directions.   He may require an indemnity, with a surety, if that be important for his security.   If he make no such request, but undertakes to serve the process, it is not sufficient for him to say that he had some information which led him to believe that it was unsafe so to serve it.   To admit such an excuse would be dangerous, and the authorities are the other way.   6 N. H. Rep. 405, *Ball* v. *Badger*; 4 Mass. 63, *Marshall* v. *Hosmer*;   7 Mass. 123, *Bond* v. *Ward*.

We are of opinion that an implied promise of indemnity arises from the directions to serve the process in a particular manner.   6 Shepley 79, *Gower* v. *Emery*.   The creditor giving the instructions, undertakes that they may be obeyed.

The remaining question is, whether the fact that the plaintiff had knowledge of Johnson's claim, and did not communicate it, will affect the case.   Our conclusion is that it does not, if there was no design to defraud the sheriff.   The mere fact that the plaintiff did not disclose his knowledge that Johnson had some claim, will not exonerate the sheriff for not attaching, unless it was concealed with a view of preventing a request for an indemnity, or in some other way of prejudicing the sheriff. The plaintiff might have had good reasons for not mentioning the fact that he understood Johnson had a claim upon the property.   It is sufficient that there is nothing to show that he omitted to do so from any improper motives.

*Verdict set aside.*